## FRASER-JOHNSON BRICK COMPANY v. H. C. BAIRD.

### Decided April 30, 1910.

**1.—Master and Servant—Contributory Negligence—Disregarding Rule.**

If a rule or regulation prescribed or instruction given by a master to guide his servant in the performance of his duties is violated under circumstances which would not have justified an ordinarily prudent person in doing so, then such act of disobedience is negligence as matter of law, and the court should so instruct the jury.

**2.—Same—Case Stated.**

An employe sued a brick company for damages for personal injuries caused by the falling of a trestle under the weight of loaded tram cars which the plaintiff followed out upon the trestle; the testimony was conflicting as to whether or not the company through its superintendent had warned the plaintiff not to follow the cars upon the trestle; there was no evidence of any necessity or emergency which would justify or excuse the plaintiff in violating the warning; the court submitted to the jury as a question for them to determine whether or not the plaintiff was guilty of negligence in violating the warning or order, if any was given. Held, reversible error. The violation of the warning or order would be contributory negligence as matter of law.

**3.—Charge—Duty of Master.**

A charge which in effect instructs the jury that it was the duty of a master to use ordinary care to furnish his servant with a reasonably safe place to work and a failure to use such care would be negligence, is not subject to the objection that it is upon the weight of the evidence.

**4.—Same—Quantum of Proof.**

A charge which requires an issue to be established to the satisfaction of the jury requires too great a quantum of proof in a civil case.

Appeal from the District Court of Rains County. Tried below before Hon. R. L. Porter.

*B. M. McMahan* and *H. P. Lawther,* for appellant.—A servant is barred of a recovery where he violates a known rule of the master and the same is the proximate cause of the injury. Athens Cotton O. Co. v. Clark, 126 S. W., 322; San Antonio & A. P. Ry. Co. v. Wallace, 76 Texas, 639; Pilkinton v. Gulf, C. & S. F. Ry. Co., 70 Texas, 229; Gulf, C. & S. F. Ry. Co. v. Ryan, 69 Texas, 669; Galveston, H. & S. A. Ry. Co. v. Brown, 95 Texas, 2; Texas & N. O. R. Co. v. Fields, 32 Texas Civ. App., 414; Fritz v. Missouri, K. & T. Ry. Co., 30 S. W., 85.

A servant failing or refusing to observe a rule or order of his employer made known to him, takes upon himself the risk of the consequence of such disobedience, and is as a matter of law guilty of negligence which defeats his right to recover for any injury of which such negligence is the proximate cause. Lake Erie & W. R. Co. v. Craig, 80 Fed., 488; Chattanooga R. Co. v. Myers, 112 Ga., 237; East Tennessee & G. R. Co. v. Kane, 92 Ga., 187; The John B. Lyon, 33 Fed., 184; O'Brien v. Staples Coal Co., 105 Mass., 435; Rome & D. R. Co. v. Chasteen, 88 Ala., 591; Mendota L. & H. Co. v. Lafferty, 92 Ill. App., 74; Knickerbocker Ice Co. v. Haas, 37 Ill. App., 195; Lendberg v. Brotherton Iron Min. Co., 97 Mich., 443; Coops v. Lake Shore & M. C. R. Co., 66 Mich., 448; Patnode v. Harter, 20 Nev., 303, 21 Pac., 679; Butteris v. Mifflin & L. M. Co., 113 N. W., 642.

Sixth assignment of error: The court erred in instructing the jury as follows: "It was the duty of the defendant to use ordinary care to see that the trestle upon which plaintiff was required to work was reasonably safe for use in the discharge of his duties, and a failure to discharge this duty would be negligence." Houston & T. C. R. Co. v. Simpson, 60 Texas, 103; Campbell v. Goodwin, 26 S. W., 864; International & G. N. R. Co. v. Graves, 59 Texas, 330; Houston & T. C. R. Co. v. Richards, 59 Texas, 376; Costly v. Galveston City R. Co., 70 Texas, 112; Missouri Pac. R. Co. v. Lee, 70 Texas, 496; Texas & P. Ry. Co. v. Hill, 71 Texas, 459; Campbell v. Trimble, 75 Texas, 271; Texas & P. Ry. Co. v. Murphy, 46 Texas, 356.

The court erred in admitting testimony by the witnesses J. W. English and J. A. Amous, to the effect that, prior to the accident, some of the supporting timbers of the trestle had been removed to enable an engine to pass through and under the trestle.

*Looney & Clark,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—Appellee Baird sued the appellant for damages on account of personal injuries alleged to have been received by him through the negligence of appellant.

The defendant, at the time of the injuries complained of, was a private corporation engaged in the manufacture of brick. The brick were made of clay taken from a mine some distance below the surface of the earth, and there was also found and mined from the same place lignite coal. In order to reach and convey the clay and coal to the surface and thence to the places where they were to be used by the company, defendant constructed and had in operation a 26-inch gauge tramroad of iron rails, laid upon cross-ties, that reached from

the surface downward at an angle to the clay and coal deposits, and upwards at an angle to a height of about twenty-five feet at the highest point. From the mouth of the mine for about thirty feet the tramroad is built on a dump, which, at the end farthest from the mouth of the mine, is about ten feet high. Continuing from this end of the dump the track is supported by oak posts resting on mud-sills with cap-sills on top, and stringers reaching from one bent to another, forming an inclined trestle. It extends out from the mouth of the mine about one hundred feet, gradually getting higher, and passing through the clay shed, until it reaches the height of twenty-five feet, when it proceeds on a level for several feet. The clay and coal were taken from the mine in cars, constructed with trap-doors on the sides for unloading, which were moved over the track by means of a cable. The clay was dumped in the clay shed and the coal carried farther on and unloaded at a point about ten feet from the extreme end of the track, in front of the boiler room, to be used for fuel.

The plaintiff entered the service of the defendant as a "weighman" in May, 1908. His duties were to stop the cars of clay and coal immediately after they left the mine, at the scales, and weigh them, and then to dump the clay in the clay shed and the coal in the coal bin near the end of the track. The performance of these duties carried him practically from one end of the track to the other. On the morning of the accident, and on about the fourth trip he had made that morning, Baird, having dumped two cars of clay in the clay shed, was following a train of four cars—two empties and two loaded with coal—up the track from the clay shed to the coal bin; the empties were in the rear, and Baird was walking behind or beside the last car, with one hand on the car. The cars had reached the level when a part of the first bench commenced to give way, the track sagged, the cars and Baird were precipitated to the ground, and Baird's arm was injured and broken.

Plaintiff alleges that said trestle gave way and fell because of the negligent manner in which defendant had constructed said track and trestle; because of defective, unsuitable and insufficient timber and other material used in the construction thereof; because of the defective plan, design and workmanship thereof; because the trestle was negligently constructed too small, and not sufficient in strength and efficiency, thereby rendering said trestle weak, dangerous and wholly unsuitable for the purposes and uses for which it was used; because defendant negligently permitted said trestle and the timber and material thereof to get out of repair and to become decayed, weak, unsafe and unsuitable, and had negligently failed to discover its defective condition, which could have been discovered by defendant by the exercise of ordinary care; all of which rendered the performance by plaintiff of his duties dangerous, which facts were known to defendant, or could have been known by the exercise of ordinary care, and of all of which and the dangers thereof the plaintiff was ignorant.

The defendant answered by general demurrer, general denial, plea of assumed risk, violation of rules prescribed for his safety by plaintiff, and contributory negligence.

May 14, 1909, the case was tried before a jury, and resulted in a verdict and judgment in favor of appellee for $4,000.

The court, in the ninth paragraph of its general charge, instructed the jury thus: "If you should find from the evidence that the defendant's superintendent, Shaw, prior to the injury to the plaintiff, instructed him not to follow immediately after the loaded cars as they were drawn over the roadway; and you believe from the evidence that the plaintiff disregarded this instruction, and was injured as the proximate result of disregarding the same; and you find that this act of the plaintiff was contributory negligence, as that term is defined herein, you should find for the defendant."

In this connection the defendant requested the court to charge the jury as follows: "In addition to the main charge, you are instructed that if you find from the evidence that Shaw instructed the plaintiff, Baird, in the performance of his duties as a weighman, as he followed loaded cars up the track to stop at the end of the clay shed and wait until the loaded cars had gained the level and were brought to a standstill before proceeding up the track to them for the purpose of unloading same; and you further find from the evidence that on the occasion in question the plaintiff, Baird, disobeyed these instructions, and, instead of standing at the end of the clay shed, followed immediately after the loaded cars as they went up the track; and you further find from the evidence that, had the plaintiff Baird obeyed said instructions and remained at the edge of the clay shed while the loaded cars went up the trick, that the giving way of the upright timber and the falling of the cars to the ground below would not have resulted in an injury to the plaintiff, you will find for the defendant."

Upon the theory that if the defendant's superintendent, Shaw, warned the plaintiff that it was dangerous to follow immediately after the loaded cars as they were drawn up the trestle or roadway, and instructed him not to do so, but to remain at the end of the clay shed until the cars had reached the level part of the trestle and were stopped, the plaintiff, in disobeying such instruction, was guilty of contributory negligence as a matter of law under the facts of the case, it is assigned that the court erred in submitting in the general charge quoted, as a question of fact for the determination of the jury, whether or not such act of disobedience was negligence on the part of the plaintiff, and in refusing to give instead the special charge requested. We think the assignment well taken.

T. J. Shaw, superintendent of the plant, testified: "When Baird started to work as weighman, I gave him instructions how he should perform his duties when he went his first trip over the trestle. I went with him and showed him how to unload the clay and coal. When he first went on there to work I cautioned him very particularly about the work, and showed him how to do. When he first went to work we did not get out any coal, and after we went to digging out coal I cautioned him very particularly about following after the cars, because I was afraid of that part of the trestle. I instructed him to stop right on the inside of the clay shed, where the cars would stop to be unhooked from the cable. I told him why I had him stop there was because I was afraid of that part of the trestle. I am sure that I

told him that, and that I had timber there for the purpose of rebuilding it. I remember Mr. Baird asking me what I was going to do with the timbers I had there, and I told him I was going to repair the trestle by the coal bin. I noticed him in his work after I gave him instructions. I instructed Mr. Baird more than once with reference to not following the loaded cars. I was there the day of the accident. . . . Just a few moments before the accident I started and had gotten halfway up the pile of clay to the track, going to Henry (plaintiff), when one of the boys called to me and told me to look at the pipe. When I started up the pile of clay to Henry, I saw him. Henry (plaintiff) had just signaled the cars up. As he came by the switch he had his hand on the back of the car, walking along, and the trestle work came down. In the position I saw Henry Baird he was not carrying out my instructions. I had told him to stop just in the end of the clay shed. When I heard the crash I went to it. I knew there was somebody hurt, and the first thing he (plaintiff) said was, 'My arm is broken.' " On cross-examination this witness further testified: "I said I cautioned him not to walk by the side of those cars. I did this because I thought there was danger of that trestle falling down. . . . I cautioned him to stay there by the clay shed because I thought the trestle might break, and for other reasons. I did not think the trestle was dangerous. . . . I cautioned him carefully not to follow up those loaded cars. I cautioned him because I thought the cable might break. I did not think there was any danger of the track falling. I cautioned him because I was trying to keep him out of danger and out of trouble, and I have no further explanations to make about it. . . . The reason why I did not warn him to stay at the tipple while the cars were being pulled into the clay house was because it would not have hurt him if he had fallen off of it." C. W. Kennedy, an ex-employe of the appellant, testified that he heard Mr. Shaw give plaintiff instructions not to leave the clay shed until the car stopped. W. A. Davis, an employe of appellant, testified that about forty-eight hours prior to the accident he heard Superintendent Shaw, while standing on the ground, speak to plaintiff, who was standing upon the trestle following up behind the cars, with his left and on the back car, and say, "Henry, for God's sake, don't follow up those loaded cars."

The plaintiff denied the statements of Kennedy and Davis, and testified that Shaw never gave him any warning or instruction whatever. This raised an issue of fact as to whether or not the instructions were given the plaintiff as claimed by the defendant, and that issue was properly submitted in the court's charge. There is no evidence in the record, however, showing that an emergency existed which justified or excused the plaintiff in disregarding such instructions, if they were in fact given.

The proposition, broadly stated, that if a servant in the discharge of his duties disobeys a general rule or regulation prescribed by the master for the conduct of such servant he is guilty of negligence *per se,* and can not recover for an injury resulting from the act done in violation of such rule, is, perhaps, an incorrect statement of the law upon the subject in this State. But if the rule or regulation prescribed

or instruction given to guide the servant in the performance of his duties is violated under circumstances which would not have justified or excused an ordinarily prudent person in doing so, then such act of disobedience is negligence as a matter of law. In Galveston, H. & S. A. Ry. Company v. Adams, 94 Texas, 100, it is said: "If a violation of a rule shows conclusively that the servant can not recover under the facts of the case, the question of contributory negligence becomes a question of law to be decided by the court; if, however, under the facts of the particular case, there might be a phase in which the servant would be justified or excused in disobeying the rule of the company, then it becomes a question for the jury to determine whether such act is negligence; that is, whether or not under all the circumstances a reasonably prudent person would have done as the plaintiff in the case did."

In the later case of Railway Company v. Brown, 95 Texas, 2, Chief Justice Gaines, speaking for the Court, says: "It may be that the general rules of a railroad company for the conduct of its employes are not absolute. Circumstances creating an emergency may exist which may excuse the servant for disregard of a rule. Hence the case would have to be clear in which the court should hold that the disobedience of a mere rule is negligence *per se.* But in this case we have not only a general rule, but a plain, specific order to do a particular act. The order was absolute, and the duty was absolute. There was a failure to discharge the duty, and there being no controversy as to these facts, that failure was negligence as a matter of law."

Likewise, in the case at bar, if the plaintiff was instructed, as contended by appellant and as its witnesses testified he was, not to follow immediately after the loaded cars, but to stop at the end of the clay shed until said cars were brought to a standstill on the level part of the trestle or track, then such instruction was not merely a general rule, but a plain, specific and absolute order, and the plaintiff's duty to obey it, in the absence of an emergency or circumstances which would have justified its violation, was absolute. Upon the question whether or not the instruction was given, the testimony was conflicting, and, as stated, an issue of fact in regard thereto raised, but we have found no testimony in the record tending to show any reason, justification or excuse for disregarding the instruction if, in fact, it was given. There is testimony to the effect that, before plaintiff's duties with respect to the unloading of the cars were fully performed, he was required to be upon or near that portion of the trestle that gave way, but it does not appear that he was directed to follow immediately after the cars to perform that duty, or that in its proper performance he was necessarily compelled to do so. It clearly appears that, had he remained at the end of the clay shed, he would have been about thirty feet from that portion of the trestle that gave way at the time it gave way and fell, and would not have been injured thereby.

We conclude that the court correctly submitted in its general charge the issue as to whether or not the defendant's superintendent, Shaw, prior to the injury to the plaintiff, instructed him not to follow immediately after the loaded cars as they were drawn over the roadway, but that it was error to submit to them as an issuable fact whether or

not the act of the plaintiff in disregarding such instruction was contributory negligence; that the special charge, the refusal of which is complained of, in the state of the evidence now before us, correctly applied the law to the facts, and should have been given.

The other assignments of error disclose, in our opinion, no reversible error. The charge complained of by the sixth assignment of error was not upon the weight of the evidence. It was the duty of the appellant to use ordinary care to furnish the appellee a reasonably safe place to work, and the failure to use such care would be negligence. That is the effect of the charge attacked in this assignment, and it correctly expresses the law on the subject.

Nor did the court err in admitting the testimony of the witnesses English and Amous, complained of in the eighth assignment, to the effect that, a short time prior to the accident, the defendant took out some of the supports of the trestle. We agree with counsel for plaintiff that this testimony was admissible as tending to show that the defendant thereby weakened the trestle and rendered it less safe as a place upon which the plaintiff was required to work.

In regard to the special charge refused and made the basis of appellant's fourth assignment of error, it is sufficient to say that if this charge, in so far as applicable, was not covered by the main charge, it was erroneous in that in telling the jury the burden of proof was on the plaintiff upon the issue therein sought to be submitted, they were instructed that such burden required the plaintiff to establish such issue to *"your satisfaction."* It has often been held that such an instruction required too great a quantum of proof and should not be given.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*