## LOGAN et al. v. HUNT.
### No. 12537.

Court of Civil Appeals of Texas. Fort Worth. July 18, 1931.

Rehearing Denied Sept. 19, 1931.

Taylor, Muse & Taylor, of Wichita Falls, for appellants.

E. G. Thornton, of Olney, for appellee.

BUCK, J.

Mrs. Maud Logan, joined by her husband, R. A. Logan, Miss Nell Rayburn, a feme sole, Ola Smith, joined by her husband, Clint Smith, Walter Rayburn, and Lore Rayburn, the latter a minor suing in the name of her mother, Mrs. Dora Jenkins, sued E. W. Hunt in trespass to try title, alleging that the father of the plaintiffs, W. O. Rayburn, departed this life about June 8, 1929, and was possessed of 80 acres of land out of the T. E. & L. Co. survey No. 1366, abstract No. 856,

being the east one-half of the west one-half part of said survey, fully described in a deed recorded in volume 86, page 291, of the Deed Records of Young county.

It was further alleged that Mrs. W. O. Rayburn, the first wife of the deceased, and the mother of all of the plaintiffs except Lore Rayburn, owns the west one-half of the west one-half part of said survey; that W. O. Rayburn died intestate, and that, under the statute of descent and distribution, the 80 acres of land owned by him at and prior to the time of his death descended to his children; that there is no administration pending upon the estate of W. O. Rayburn, and none is necessary.

In a rather lengthy pleading, the plaintiffs set up their cause of action.

The defendant answered the petition by a general denial, and further pleaded that W. O. Rayburn, at the time of the execution of said deed, was mentally capable of knowing and understanding his business affairs. The plaintiffs had alleged that he was at said time mentally incapable of understanding the nature and purport of the deeds, and was incapable of realizing or understanding that he was acknowledging a deed conveying his 80 acres of land to defendant, E. W. Hunt.

E. W. Hunt filed several pages of exceptions to plaintiffs' petition, but, since the case was not determined by said exceptions, they will not be further noticed.

The court, after defining mental capacity, submitted the case on one issue, which, together with its answer, is as follows: "At the time of the execution of the deed in controversy, on September 27, 1920, by W. O. Rayburn to E. W. Hunt, did the said W. O. Rayburn have mental capacity, as that term has been explained above, to execute said deed? Answer: Yes."

Upon this verdict the court rendered judgment for defendant, and plaintiffs have appealed.

### Opinion.

There were some 25 witnesses who testified, and only Mrs. Rayburn, the former wife of W. O. Rayburn, and perhaps Dr. C. W. Castner, and perhaps one or two others, testified to any circumstances or facts tending to show that W. O. Rayburn at the time of the execution of the deed was of unsound mind. The other witnesses testified that in their opinion at the time of the execution of the deed W. O. Rayburn was of sound mind. According to the testimony of E. W. Hunt, and the agents of said E. W. Hunt, to wit, A. A. Cooper and J. J. Egan, who were instrumental in selling the land and effecting the trade, Rayburn came to the agents and asked them if Mr. Hunt would not sell him some land he owned in Knox county and take his 80 acres in as a part payment. Upon being

approached, Mr. Hunt at first refused to entertain the trade, but, at the insistence of Rayburn and of Cooper and Egan, he finally consented to sell Rayburn 400 acres of the Knox county land at $60 an acre, and take in the 80 acres of land then owned by Rayburn as part payment. Mr. and Mrs. Rayburn had been divorced some time before this transaction, and had divided their effects, and Mrs. Rayburn owned 80 acres of the 160-acre tract which had theretofore been their homestead. Mr. Rayburn had subsequently married again, perhaps after he moved to Knox county. He was tried for lunacy in the county court of Young county perhaps after he had secured a divorce from Mrs. Rayburn, on April 6, 1920, and the jury failed to agree, and subsequently the lunacy case was dismissed. Some time before the death of W. O. Rayburn, he was confined in the insane asylum located at Wichita Falls, and died there.

Appellant groups propositions 1, 2, 3, and 4, which complain of the action of the trial court in sustaining the exceptions to certain evidence. The plaintiffs below introduced the deposition of Dr. C. W. Castner, who was superintendent of the Wichita Falls State Hospital during the time that W. O. Rayburn was confined there. The questions asked him, to which objections were sustained, on the ground (a) because the questions and answers were wholly irrelevant and immaterial, and (b) because too remote, and because prejudicial to the rights of defendant, were concerning the history of W. O. Rayburn related or told to Dr. Castner at the time of Rayburn's entrance into the state institution. The question asked, as complained of in exception No. 1, was: "State whether or not you had an occasion to go into the history of W. O. Rayburn at the time he was committed to the Wichita Insane Hospital, if you have said he was. If yea, please state as nearly as you can a complete history of W. O. Rayburn with reference to his condition at the time he was received, as well as any statement, if any he made, as to his prior life and condition. Please answer fully."

It is urged that the witness, if permitted, would have answered: "I did have occasion to go into his history, same being the records as furnished by the Court of Foard County, which included the medical testimony of two physicians who had attended him. Question and answer of the court which was a matter of the record and having been present when mental examination was made of the patient taking part in this examination and also having observed him from time to time, I do not recall that we obtained much personal history from the patient himself."

In the first place, we believe the testimony is objectionable, on the ground of being hear-

say, but no complaint is made on that ground. The witness was not asked a hypothetical question, but was asked to relate the history of Rayburn as shown by the record in the trial court of Foard county, where he was adjudged insane. This trial was had some time shortly after March 17, 1926, some six years subsequent to the time when the deceased had executed the deed which the suit sought to set aside. We are inclined to think that the time inquired about was too remote from the time the deed was executed to make pertinent any inquiries about the condition of the deceased at the time inquired about, some six years after the deed was executed. A man might be insane in 1926, and yet be of sound mind in 1920.

In 14 R. C. L. p. 620, it is said: "It is obvious that, when a deed, will, contract or other act is called in question by reason of the mental condition of a party to the same, the sanity or insanity of such person at the time when he acted is the issue before the court and if it be proved that he was sane at that time, his previous or subsequent mental condition is immaterial. It is, however, well settled that it is permissible to receive evidence as to the condition of the person's mind both before and for a reasonable period after that time, as tending to show his mental condition at the time in question. Whether the acts or declarations are sufficiently near in point of time to warrant their being submitted to the jury, as tending to show his mental condition when he did some act which is questioned on the ground of his incapacity, rests chiefly in the discretion of the presiding judge."

In Morris v. Stanford, 295 S. W. 347, 349, the Dallas Court of Civil Appeals, in an opinion by Chief Justice Jones, said: "In proving mental incapacity, much latitude is necessarily allowed, and the evidence is not confined to the very day of the transaction in issue, but it must be so related to such day in point of time that it will tend to establish the fact that on the day of the contested transaction there existed the mental incapacity. If mental incapacity existed for a period not too remote from the day in question, evidence of such fact is admissible, not primarily to establish incapacity of such time previous to the transaction, but as a fact tending to prove that incapacity existed on the date of the inquiry."

In Jackson v. Watson, 10 S.W.(2d) 977, 980, by the Commission of Appeals, approved by the Supreme Court, in an opinion by Justice Leddy, it is said: "It is well settled that it is permissible to receive evidence as to the condition of a person's mind, both before and for a reasonable period after as tending to show his mental condition at the time in question" —citing cases.

The opinion further says:

"We think the correct rule on this subject was announced by the Court of Civil Appeals which decided this case in the case of Caddell v. Caddell, 62 Tex. Civ. App. 461, 131 S. W. 432. In discussing a similar question the court said:

" 'It is true that, if the portion of the Notary's evidence objected to be stricken out, there remains no direct testimony that on the very day of the execution of the deed deceased was insane. But the Court was authorized to consider the proof of the mental and physical condition of the grantor both before and after the execution of the deed, as we must assume he did, in determining the condition of the mind of the grantor at the time of the execution of the deed. And this proof is sufficient to support the finding of general imbecility and mental incapacity continuing all during the period before the execution of the deed and until the grantor's death afterwards.' "

In Caddell v. Caddell, supra, it was shown that the grantor died in about two months after the execution of the instrument in question. We certainly think that the evidence was admissible to show that the grantor was of unsound mind two months after the execution of the deed. We overrule this assignment, and also other assignments directed to the exclusion of the testimony offered in the deposition of Dr. Castner. Certain parts of the deposition of Dr. Castner were admitted in which he stated his experience with insanity, and further stated:

"From the history that I received from W. O. Rayburn or from other sources, when he was received into the insane hospital in addition to the fact that in 1918 he was charged with and tried for lunacy, the jury having hung upon the trial, that during the years 1919, 1920, 1921, 1922, 1923, 1924 and 1925, he was always talking about his property rights and that people were trying to defraud him out of his property rights, together with the fact that he would sleep at night with an open knife under his pillow, saying that people were going to kill him, together with the further fact that he would load a target and stand with it in his hand saying that people were trying to get rid of him, together with the further fact that he had a will written and took it to a man by the name of Brown and told him that as quick as he died to be sure and have the will placed of record because the people were going to throw him in a lake just as soon as he died and that he wanted the will of record, together with the further fact that he went to a place and paid his board for one month in advance and would go to other places and stay at other places. That all of this happened between the years of 1919 and 1924 and most of it happening during the year 1920. Basing my opinion upon the foregoing facts

or statements, it is my opinion that he was of unsound mind. * * *

"I did not know Mr. Rayburn prior to October 1, 1920, neither did I know him prior to the year 1926. I am only giving my opinion as to whether or not Mr. Rayburn was not mentally capable on or about October 1, 1920, of understanding his property right and knowing the effect of a deed. Taking the history of his case, it is my opinion that he was insane and probably could not understand about his property rights in 1920. The duration of manic depressive insanity has no special limits of duration and especially so in this case. My opinion being based on the history being dated as far back as 1918."

We think that in this testimony, admitted without objection, Dr. Castner had an opportunity to state his opinion as to whether or not Rayburn was insane at the time of the execution of the deed. We overrule assignments 1, 2, 3, and 4, all of which have reference to the exclusion of certain testimony by this witness.

■ The trial court instructed the jury as follows: "You are instructed in this case that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence to your satisfaction, the negative of the above special issue and if plaintiffs have not discharged this burden your answer will be in the affirmative."

The plaintiffs below did not object to the addition of the words "to your satisfaction" in this charge, and we are of the opinion that while, as held in many cases, such as Carl v. Settegast, 237 S. W. 238, by the Commission of Appeals, and approved by the Supreme Court, it is error for the trial court to add any words in the definition of burden of proof, such as "clearly," "to your satisfaction," etc., we do not believe that such erroneous charge constitutes fundamental error. As to the cases holding that an instruction requiring a jury to be "satisfied," or to find "to their satisfaction," see Western Cottage Piano & Organ Co. v. Anderson, 45 Tex. Civ. App. 513, 101 S. W. 1061; Seligmann v. L. Greif & Bro. (Tex. Civ. App.) 109 S. W. 214; Green v. Kegans, 54 Tex. Civ. App. 237, 118 S. W. 173; Terrell Wholesale Grocery Co. v. Christian Peper Tobacco Co. (Tex. Civ. App.) 120 S. W. 565; Fraser-Johnson Buick Co. v. Baird, 60 Tex. Civ. App. 538, 128 S. W. 460. But we have been cited to no case, and have found none, holding that such error constitutes fundamental error, and should be considered in the absence of an objection in the court below. Therefore, this assignment is overruled.

■ The seventh proposition complains of the action of the trial court in overruling the motion for new trial, and especially that part of said motion setting up claimed newly discovered evidence. Attached to the motion for new trial was the affidavit of W. F. Frady, who made an affidavit that he was a farmer and has resided in Young county for many years; that he was well acquainted with W. O. Rayburn during the year 1920, as well as prior and subsequent thereto; that he was a brother-in-law to Rayburn and associated with him during said year of 1920 and was on good terms with him; that the said W. O. Rayburn on numerous occasions during the year 1920 told him that people were jumping on the running board of his car trying to kill him, and that he would go over and over said statements and repeat them to affiant often; that Rayburn also told affiant when affiant's children were playing around and on the barn of W. O. Rayburn that they were tearing up his barn; that he believed that something was wrong with W. O. Rayburn and that he would kill himself and that something ought to be done with him.

We are of the opinion that this evidence is merely cumulative of similar evidence given on the trial. Therefore the assignment is overruled.

We have examined other assignments, but find no error. Therefore the judgment of the trial court is in all things affirmed.