CHARLES S. STEWART v. MALBURY T. HAMILTON.

On an assignment that the verdict (for the plaintiff,) was contrary to the law and the evidence, in a suit for a breach of warranty of the soundness of a horse, the Court said, The testimony was conflicting ; that in favor of Hamilton (the plaintiff,) was given by fewer witnesses than that in favor of Stewart, (the defendant,) but of a less negative character. There is not that preponderance in favor of Stewart, produced by the number of his witnesses, which would enable this Court to say that the verdict is clearly wrong.

The newly discovered evidence is cumulative, tending to establish what was sought to be established on the trial, and is not of that forcible character to satisfy the mind that the result would be changed by it.

Error from Titus. Tried below before the Hon. William S. Todd.

Suit by defendant in error against plaintiff in error for breach of warranty of soundness of a horse sold to the former by the latter. The evidence was as follows :

Plaintiff called Jacob Garrett, who testified that he sold the horse to the defendant early in the Spring, 1853, as an unsound horse, for the price of about $80 in corn ; that the unsoundness, subject to which he sold him, was that when ridden five or six miles and then stopped and suffered to cool, he got stiff and unable to travel ; when rested, traveled off, appeared gay and spirited ; witness owned the horse three or four weeks, and this was the case whenever he used him ; no other disease on the horse that witness knew of, and it was not apparent until he had been used. Witness saw the horse on same day plaintiff got him, in possession of plaintiff, and told plaintiff his condition when witness had him. Witness got the horse from Newman.

Galloway, witness for plaintiff, testified that he was present when defendant traded the horse to plaintiff ; about 24th June, 1853, in town of Mt. Vernon ; plaintiff was to give defendant a wagon worth $130, for the horse, and $30 in cash ; defendant said the horse was a good traveler, and that he warranted him sound ; and the trade depended on whether defendant liked the wagon ; neither wagon or horse was present ; plaintiff spoke as if he had seen the horse ; defendant examined the wagon about two weeks afterwards and was pleased with it ; seven or eight days afterwards witness delivered the wagon to defendant ; witness was not present when the horse was delivered to plaintiff, but saw him same day, and as soon as he examined the horse, told plaintiff that he was cheated ; that the horse was covered all over with little bumps, and by picking of the hair, he saw matter in them. Witness saw no other evidence of unsoundness at that time. Plaintiff said he reckoned there was nothing the matter with him, and if there was, defendant had warranted him. Witness traveled home with plaintiff, the latter riding the horse and traveling some thirty miles ; discovered nothing the matter with the horse going home. A few days after they got home with the horse, discovered that he looked sleepy and moped about ; continued to grow worse ; got stiff and died in some ten days ; had the horse at home fifteen or twenty days. Witness doctored the horse a good deal in various ways ; tied him in the water ; did not know what was the matter with him, but knew it was not founder ; did not know of plaintiff's riding the horse but once, and then only some four miles, a-fishing ; witness attended to the horse ; thinks he fed him all the time ; never gave him more than eight or ten ears of corn at a feed ; witness lived with plaintiff; plaintiff said defendant told him not to ride the horse hard, so as to overheat him, and not to give him too much corn ; plaintiff also said that defendant said the bumps on the horse were caused by buffalo gnats ; the horse was in good order ; had fallen off very little when he died ; sometimes

the horse was hearty and eat all the corn ; at other times left some. (The statement of facts did not distinguish between the examination in chief and the cross-examination.—REPS.)

. Newman, witness for defendant, testified that he brought the horse to the country ; traded him to Garrett ; the horse was sound ; never knew anything to be the matter with him.

Miller, witness for defendant, testified that he was acquainted with the horse ; saw defendant riding him often ; never knew anything to be the matter with him ; traveled in company with said horse, to Mt. Vernon, some eight miles ; saw nothing wrong about him.

Brown, witness for defendant, testified that he knew the horse while defendant owned him ; saw defendant riding him frequently ; saw nothing the matter with him ; was a fine looking horse ; thinks that defendant kept him for a saddle horse ; thinks that if anything had been the matter with the said horse, he would have known it.

W. Hughes, witness for the defendant, testified that he lived a close neighbor to defendant ; knew the horse in controversy ; saw him often ; sometimes running out with other horses, sometimes defendant riding him ; knew nothing the matter with the horse ; saw the horse frequently, after defendant had just ridden him from Mt. Vernon, a distance of some seven miles ; examined the horse ; was talking of trading for him ; thinks he was sound ; thinks if the horse was unsound he would have known it.

S. Hughes, witness for defendant, testified that he lived with and did business for defendant when he owned the horse ; knew the horse well ; never knew anything to be the matter with him ; took him to be a sound horse ; fed him frequently ; thinks if the horse had been unsound he would have known it ; had good opportunity ; saw him frequently after defendant had ridden to Mt. Vernon and other places ; saw nothing wrong about him.

J. C. Newman, witness for defendant, testified that his

father brought the horse to the country; knew him a good while; never knew anything to be the matter with him; saw him after defendant got him; looked well.

Craft, witness for defendant, testified that he saw the horse near plaintiff's house, tied in a creek; supposed the horse to be foundered; talked with plaintiff about the horse, and what was the matter with him; does not recollect that plaintiff said what was the the matter with him, but founder was talked of, and that to put them in water was a good remedy and one frequently used; never knew putting or standing a horse in water a remedy for any other disease or complaint than founder.

The Court gave the law of the case correctly in charge to the jury; and the jury found for the plaintiff $100.

The defendant moved for a new trial, on the ground that the verdict was contrary to the law and the evidence; and on the ground of newly discovered evidence.

There was an affidavit by defendant, in support of the last ground, to the effect that the testimony was unknown to him at the trial, and that he could obtain it at next Term. There were also two affidavits of the newly discovered evidence; one to the effect that affiant saw the horse on the same day he was delivered to plaintiff, after plaintiff had ridden him some eight miles, and that affiant being informed how far plaintiff had ridden the horse that morning, and having his attention particularly called to the fact that Jacob Garrett had said the horse was unsound some time before, affiant, in company with one G. Myers, examined the horse critically, with a view to detect some unsoundness in him, but found none; and that plaintiff said the horse was a fine traveler, that he had tried him, that he performed well, and that he was well pleased with him. The other affidavit was to the effect that the affiant had heard one Henry Farrer, who resided in Upshur county, say that plaintiff had told him, in answer to a question from him, that he would not take a hundred dollars for the horse, that he

Stewart v. Hamilton.

was worth more money ; and affiant heard said Farrer also say that it was his opinion that the horse " was brought to his " death by an overheat which he got in a drive in which said " Hamilton rode said horse."

Motion for new trial overruled, &c.

*W. H. Johnson*, for plaintiff in error, argued that the verdict was contrary to the law and the evidence ; and to. the point as to newly discovered evidence, cited 3 Tex. R. 49 ; 4 Id. 7 ; Id. 89 ; 8 Id. 331 ; 9 Id. 501 ; 13 Id. 449.

*J. P. Hill*, for defendant in error, to the first point, cited 7 Tex. R. 3 ; 4 Id. 89 ; 1 Id. 26 ; and to the second point, 8 Id. 331.

*S. F. Moseley*, also for defendant in error, as to the point of newly discovered evidence, cited 4 Tex. R. 311.

ROBERTS, J. The errors assigned are, that the verdict was contrary to the law and the evidence ; and that the Court erred in not granting a new trial.

Upon the trial there was no dispute as to the law of the case ; and the verdict, being for Hamilton for the value of the horse, was founded on the belief, on the part of the jury, that the horse was warranted to be sound, and that he was unsound at the time of the sale. Such unsoundness is the contested fact.

The testimony was conflicting. That in favor of Hamilton was given by fewer witnesses than that in favor of Stewart, but of a less negative character. There is not that preponderance in favor of Stewart, produced by the number of his witnesses, which would enable this Court to say that the verdict is clearly wrong. In fact the warning given by Stewart to Hamilton, not to overheat or overfeed the horse, rather confirms than attacks the conclusion of the jury, that the horse

was unsound ; and the fact that Hamilton expressed himself well pleased with the horse a few days after he had purchased him is by no means conclusive against him. All these things it is the province of the jury to judge of ; and their familiarity with them eminently fits them to determine them, and gives a weight to their judgment amidst a confusion of conflicting facts, opinions and presumptions, not readily to be disregarded by a Court. (Russell v. Mason, 8 Tex. R. 226 ; Wells v. Barnett, Id. 509 ; Briscoe v. Bronaugh, Id. 340.)

The second ground taken in the motion for new trial relates to newly discovered evidence. In Stewart's affidavit, filed after the trial, in support of this ground, he simply states that since the trial he has discovered new and material testimony, which was unknown to him at the trial, without showing what diligence he had used to obtain testimony, or in any manner accounting for his not finding it out before.

The evidence is cumulative, tending to establish, what was sought to be established on the trial, that the horse was not unsound at the sale, and that he most probably died from improper treatment afterwards ; and is not of that forcible character to satisfy the mind that the result would be changed by it. To establish bad treatment it was proved that the horse was tied in the creek, as was supposed for a founder ; and by the new evidence it is proposed mainly to establish that in the opinion of the witness the horse died by an over heat in a drive in which Hamilton rode him. This being the most prominent fact sought to be proved, it is unnecessary to refer to any other. Under the well established rules of this Court on the subject of new trials, a case has not been made out upon which this Court can furnish relief. (Madden v. Shappard, 3 Tex. R. 49 ; Watts v. Johnson, et al, 4 Id. 311.)

Judgment affirmed.