## COLEMAN v. ROLLO.

### No. 3813.

Court of Civil Appeals of Texas. Amarillo.
May 11, 1932.

Rehearing Denied June 1, 1932.

Vickers & Campbell, of Lubbock, for appellant.

Rob't A. Sowder, of Lubbock, for appellee.

HALL, C. J.

Rollo sued Coleman, alleging that about November 20, 1930, while plaintiff was driving his automobile northward along Avenue Q in Lubbock, defendant's minor son, Grover Coleman, about 17 years of age, was driving a Ford automobile belonging to the defendant westward on Thirteenth street, and through Grover's negligence a collision occurred, resulting in personal injuries to his damage in the sum of $7,500, and further damaging his automobile in the sum of $600.

The negligence alleged is violation of the law of the road and the city ordinances in failing to observe and obey a stop sign on Thirteenth street, driving at the rate of 45 miles per hour and failing to keep a lookout.

Defendant answered, alleging that his son Grover was driving his Ford car without defendant's consent or permission and on no mission of business or otherwise for defendant. The answer also contains pleas of contributory negligence which are immaterial in the consideration of the contentions urged here.

Upon the conclusion of the evidence, the defendant requested the court to direct a verdict in his favor.

The court submitted the case to the jury on several special issues, the first being: "Do you find from a preponderance of the evidence that the defendant C. A. Coleman, either expressly or impliedly, gave his consent to his son Grover Coleman to use the Ford car in question on the date and at the time of the collision?" This was answered in the negative.

Other issues were submitted, in response to which the jury found that the minor, Grover Coleman, was guilty of negligence in exceeding the speed limit, which was the proximate cause of the injury, and other findings in plaintiff's favor.

Based upon the verdict, the court rendered judgment in favor of plaintiff in the sum of $506.25 for personal injuries and damages to plaintiff's car.

The case is before us upon one assignment of error by which appellant insists that, because the jury found, in response to special issue No. 1, that the defendant's minor son was driving the Ford car without either the express or implied consent of the defendant, and because such finding is supported by both the pleadings and the evidence, plaintiff was not entitled to recover.

This is a material finding, and, if it has any evidence to support it, the court could not ignore it and render judgment contrary to it. Rev. St. art. 2211, as amended by Acts 42d Leg. (1931), c. 77, § 1 (Vernon's Ann. Civ. St. art. 2211).

It is apparent from the judgment that the court considered this finding immaterial. This is error.

The appellee insists that, under the undisputed facts, the family purpose doctrine is not a defense. On the other hand, the appellant contends that he is not liable under the family purpose doctrine, because the car which his son Grover was driving was not a car used for convenience and pleasure of the family, but had been bought for his sons Grover and his brother, both minors, to be used by them in attending school two or three miles distant from their home. The sons were members of the family. The duty of sending his children to school rested upon defendant as the head of the family, and a car used for that purpose was a "family car."

The evidence showed that defendant had owned the car something over a year, and the speedometer registered almost 24,000 miles, when, as insisted by appellee, not more than 3,000 miles would have been registered if the car had been used by the boys in attending school and for no other purpose.

Grover testified that his father owned two cars, the Ford car, which he was driving on the night of the wreck, and a Chevrolet. He admitted that he had driven the car away from home on several occasions without asking his father's permission. He further testified that his father furnished gasoline for both cars and kept a five-gallon can of oil at home for use. That the car had been driven to Crosbyton to two ball games and also to Lubbock and Tahoka.

The defendant testified that his main purpose in buying the car was for his sons to use in attending school. That he also owned a Chevrolet sedan. That he had used the Ford car several times himself and had permitted his son Grover to use the car for other purposes than driving back and forth to school. That his family consisted of himself, wife, an unmarried daughter about 23 years of age, and his two sons, Grover and Luther. When asked if he required the boys to get permission to drive the car anywhere else except to school, his reply was: "Yes. They ask me if they drive it anywhere else. Now, there was a whole lot of basket balls and foot balls going on and when they would go to school the teachers would want them to take the car and take some of the pupils to these foot balls and basket balls and they did that, but I did not raise any kick about that, because it was in school." That Luther drove the car down to Starville two or three times with another boy to see some girls and he let him drive it there, the round trip being about 350 miles. That he gave no directions as to which of the boys should drive the car when they attended football and basket ball games. That he knew Grover had been to Lubbock several times when he did not ask the defendant's permission. That he gave him permission to go once or twice to see a girl at Lubbock. He further said: "I would rather he would not, but then I just can't handle them just like I would like to every time about that. The fact of the business is when a boy gets 15 or 16 years old you can't get him to do everything that you want him to, not very well you can't."

He said he purchased the car for the convenience of himself and the boys that they might have some way to get to school, and that it was necessary because it was too far for them to walk and the car was a convenience to both him and the boys. That once in a while he would send the boys to town in the car to purchase things. That he gave both boys permission to use the car in going to parties, and only refused once when they wanted to go to a public dance in the neighborhood, but would let them go to private houses to parties and dances indiscriminately. That once in a while the boys would drive the Chevrolet car, and he knew that Grover had been going to Lubbock to see a young lady for a month or two after he met her down at Wilson where he got acquainted with her and he thought Grover liked her very well, "just as all boys where they get foolish about going to see a girl they like."

We think it is clear from this testimony that the defendant had two family cars, one used principally by himself and his unmarried daughter, although Grover and his brother drove it at times. It will be conceded that this car might appropriately be called the family car, but it is a matter of common knowledge that many families have two and even more cars used indiscriminately by the several members, while other families have cars for the use generally of certain members.

When an automobile is for the general use, pleasure, and convenience of the family, it comes within the family purpose doctrine. It does not appear that the unmarried daughter, who was a constituent of defendant's family, was prohibited from using the Ford. The wife could not drive, but the defendant himself was at liberty to drive it, and admitted that he frequently used it. While the primary purpose in purchasing the Ford might have been to furnish a convenient means of transportation for the two minor sons to and from school, that would be a "family purpose." The defendant himself says it was used with his consent in going on errands to town and during the football and basket ball season in attending at least several match games. It was also used in attending neighborhood parties and dances at private houses. This shows the sons used it for pleasure. The defendant does not testify that he ever denied Grover the use of the car to go to Lubbock to visit the young lady whom he says Grover liked very well. He admitted that he knew Grover went to see the young lady in question. Defendant had bought the Ford for the use, convenience, and pleasure of his sons, and Grover was carrying out his father's purposes in part at the time of the accident. Allen v. Bland. (Tex. Civ. App.) 168 S. W. 35; Stowe v. Morris, 147 Ky. 386, 144 S. W. 52, 39 L. R. A. (N. S.) 224; Cohen v. Hill (Tex. Civ. App.) 286 S. W. 661.

The evidence of the speedometer to the effect that the car had been driven over 23,000 miles has not been impeached, and establishes the fact that the car must have been used more extensively than in transporting the boys to and from school, a distance of 2 or 3 miles, during a period of about twelve months. The defendant testified it had not been loaned to other parties, so some member of the family had been using it as a matter of convenience and pleasure more than the defendant's testimony would indicate. Since the record shows that it was a family purpose car, the necessary inference from the defendant's testimony is that Grover, in visiting his sweetheart at Lubbock, had implied permission from the defendant to use it. It is true that Grover testified his father had not given him express permission to use the car on this particular occasion.

In 42 C. J. 1087, it is said: "To warrant the application of the family car doctrine the member of the family must have been using the car by permission or authority, either express or implied. A general permission to use the vehicle is sufficient and it is not nec-

essary that the owner know of the particular use which is being made of the vehicle upon the occasion of the injury. Where the act of the member of the family is a natural and probable consequence of his expressly authorized use of the car, the owner cannot escape responsibility upon the ground that his instructions were not specifically obeyed."

As said in Wallace v. Squires, 186 N. C. 339, 119 S. E. 569, 571: "The number and frequency of accidents which occur, entailing death or serious injuries to others, from automobiles driven by minors, which could not be done without the consent of the father and owner, forbid that the father should escape liability by merely stating to his son that he could not drive the car without express permission, when it may be he was constantly and repeatedly doing that very thing, as was shown in this case, and necessarily with the knowledge of the owner of the machine."

■ R. S. art. 2211, as amended, provides that the "judgments of the Court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. Provided, that upon motion and reasonable notice the Court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence."

No motion and notice, as required by this article of the statute, was given, and, since Grover testified that his father had given him no permission to use the car on the occasion of the injury, the findings of the jury in response to the first issue is not without evidence to support it. While we think a proper judgment has been rendered, in so far as the evidence shows, the trial judge was not authorized to render judgment contrary to finding No. 1 without compliance with the conditions precedent prescribed by amended article 2211. For that reason the judgment must be reversed.

■ In view of the finding of the jury upon the issue of consent, this court is not authorized to set the finding aside and render final judgment contrary thereto, there being some evidence in the record sustaining the finding. Tunnell v. Reeves (Tex. Com. App.) 35 S.W.(2d) 707; William & Stephens v. Belo (Tex. Com. App.) 41 S.W.(2d) 22; Belser v. Herman Hale Lumber Co. (Tex. Com. App.) 41 S.W.(2d) 208.

But for the rule announced in these cases, we would set the jury's finding upon the issue of consent aside and affirm the judgment,

but under the rule announced we reverse the judgment and remand the cause for another trial.