## ALLEN et al. v. TEXAS & N. O. R. CO.
### No. 1478.

Court of Civil Appeals of Texas. Waco.
April 5, 1934.

Rehearing Denied May 3, 1934.

husband and father, which they alleged was caused by the negligence of appellee. Appellee's railroad runs north and south along one of the streets of the city of Calvert. Said street is intersected at right angles by Burnett street, which runs east and west. The deceased, C. S. Allen, was attempting to cross from the west to the east side of appellee's track at the Burnett street crossing, when he was struck by the engine of a south-bound freight train and instantly killed.

The case was submitted on special issues, in response to which the jury found, in substance, that:

(a) Appellee's train was at the time of the accident being operated at a rate of speed prohibited by the ordinances of said city.

(b) Appellee's employees failed to exercise ordinary care in the rate of speed at which they operated the same.

(c) Appellee negligently failed to keep its Burnett street crossing in repair.

(d) None of such acts of negligence was the proximate cause of the death of said Allen.

All other acts of negligence charged against appellee were found in its favor. The jury further found, in substance, that said Allen was guilty of negligence proximately causing or contributing to his death, as follows:

(a) He failed to exercise ordinary care to discover the approach of the train.

(b) He failed to exercise ordinary care to keep a lookout to discover such approach.

(c) He failed to exercise ordinary care to avoid being struck by the train after he discovered its approach.

(d) He failed to exercise ordinary care in listening for the approach of a train before going on the crossing.

(e) Such negligence proximately caused or contributed to cause his death.

Various other acts of said Allen were found by the jury to have been negligent, but not, with two or three exceptions, the proximate cause of his death. The jury also found that the accident was not unavoidable, and assessed damages in favor of the surviving widow in the sum of $6,000 and in favor of a widowed daughter in the sum of $2,000. The court rendered judgment on the verdict that appellants take nothing by their suit and that the appellee recover its costs.

Vinson, Elkins, Sweeton & Weems and J. Hart Willis, all of Houston, and John R. Grace, of Franklin, for appellants.

Bush & Parten, Tyson & Matthews, and F. A. Woods, all of Franklin, for appellee.

GALLAGHER, Chief Justice.

This suit was instituted by appellants, Mrs. C. S. Allen, surviving wife of C. S. Allen, deceased, and her six children, against appellee, Texas & New Orleans Railroad Company, to recover damages for the death of said

### Opinion.

Appellants present an assignment in which they contend that the court erred in

overruling their motion for a new trial based on the ground that one of the jurors was related to one of the attorneys for appellee. The juror L. C. Reagan was a brother-in-law of the Honorable H. A. Bush, who as attorney for appellee took an active part in the trial of the case. There is no contention that such relationship in itself disqualified the juror. The specific contention is that appellants' counsel, in examining the several jurors, inquired concerning the relationship of each of them to any of the attorneys representing appellee; that said juror Reagan failed to disclose such relationship; that had he done so appellants would have excluded him from the trial panel by peremptory challenge. The testimony with reference to whether said juror was interrogated concerning his relationship to counsel was sharply conflicting. The court overruled the motion and is therefore deemed to have found against appellants' contention. This court has no jurisdiction to reverse a finding of fact made by the trial court on conflicting testimony and hold the contrary, when there is substantial testimony to support the finding so made. The Leader v. Elder Mfg. Co. (Tex. Com. App.) 39 S.W.(2d) 880, pars. 1 and 2, and authorities there cited; Williams & Stephens v. Belo (Tex. Com. App.) 41 S.W.(2d) 22 et seq., pars. 1, 4 and 6; Coleman v. Rollo (Tex. Civ. App.) 50 S.W.(2d) 391, 394, par. 6; Irvin v. Drake (Tex. Civ. App.) 16 S.W.(2d) 900; Walker v. Quanah & A. P. Ry. Co. (Tex. Com. App.) 58 S.W.(2d) 4, 5, par. 3.

Appellants present an assignment in which they contend that the court erred in overruling their objection to certain statements made by one of appellee's attorneys in his argument to the jury. The deceased was killed while attempting to cross from the west to the east side of appellee's track at a regular street crossing. Appellants alleged in their petition that the deceased stepped in a hole or caught his foot under the west rail of the track and fell across it, and was in that position when struck by the engine. They introduced testimony tending to support such allegation, but the testimony on such issue as a whole was conflicting. Appellants' witness Blasienz testified that the first blood stains were four or five feet south of the street crossing; that the body was found farther down the track; and that clothing was scattered from about the middle of the crossing toward the body. Appellee objected to the testimony just recited on the ground that it tended to show mutilation of the body, but the court overruled the objection. No further testimony along this line was offered. There was no testimony introduced with reference to the position of the feet of the deceased. The Honorable H. A. Bush made the closing argument in the case for appellee, and stated therein: "They say that Mr. Allen either stumbled in a hole or that he hung his foot under that rail and fell prone across the track. I am going to tell you, gentlemen of the jury, that it didn't happen that way. If Mr. Allen had hung his toe under that rail and fallen across that track, those wheels would have cut his feet off and left them on the west side. There is not a bit of testimony on the part of the plaintiffs (appellants) that Mr. Allen's feet, if they say he fell across those tracks, if they put their case on the fact that he fell down under those wheels, were on the west side of the track."

Appellants objected to said statement on the ground that the same constituted an unfair and prejudicial argument for the reason that the court had excluded evidence offered by them with reference to the position and condition of the deceased's body after the collision, and further because said argument was entirely outside of the record and not supported by the record, which objection the court overruled.

Appellants, in their objection to said argument, did not charge that the same constituted an assertion of fact purporting to be based on personal knowledge of such attorney, and we do not think that such construction would have been placed upon same by an ordinary juror. Appellants' assertion that such argument was unfair and prejudicial was, by the terms of their objection, predicated on their contention that the court had excluded the evidence offered by them concerning the position of the body, and on the further contention that the same was without the record. The court's qualification of appellants' bill shows that the court admitted all the testimony offered by them on the position and condition of the body, and that they did not offer to prove whether the feet were severed from the body and, if so, where they were found. The statement of counsel that, had deceased been lying prone on the track when the engine struck his body, his feet would have been severed and left on the west side of the rail, was merely his inference drawn from the facts in evidence. We cannot say that it was an unreasonable one, and we do not think he transcended the privileges of argument when he called attention to the fact that there was no testimony refuting such inference. The rule of law applicable here is laid down in 64 C. J. p. 265, § 284, as follows: "Counsel may state all

proper inferences from the evidence and may draw conclusions from the evidence on his own system of reasoning, although such inferences as stated by counsel are inconclusive, illogical, erroneous or even absurd, unless such conclusions are couched in language transcending the bounds of legitimate argument." The text quoted is supported by a great array of authorities cited in notes thereto. See, also, Texas & N. O. Ry. Co. v. Conway, 44 Tex. Civ. App. 68, 98 S. W. 1070, 1073, bottom first column (writ refused); Gray v. Burk, 19 Tex. 228, 233; Missouri Pacific Ry. Co. v. White, 80 Tex. 202, 207, 208, 15 S. W. 808; Southern Cotton-Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 638, 642; City of Waco v. Killen (Tex. Civ. App.) 59 S.W.(2d) 940, 941, 942, and authorities there cited. The trial court is necessarily vested with large discretion in the matter of permitting, restraining, or controlling argument, and his rulings with reference thereto will not be reviewed unless such discretion is abused. Fidelity-Phoenix Fire Ins. Co. v. Mumaw (Tex. Civ. App.) 287 S. W. 120, 121, par. 3, and authorities there cited.

██ Appellants present an assignment in which they assail the sufficiency of the evidence to support the findings of the jury that none of the several acts of negligence found against appellee was the proximate cause of his death. The acts of negligence so found were the excessive speed of appellee's train and the defective condition of the crossing over its track. Proximate cause is ordinarily a question of fact to be determined by the jury from all the evidence before them, both direct and circumstantial. Texas & N. O. R. Co. v. Ewing (Tex. Civ. App.) 46 S.W.(2d) 398, 399, pars. 1 and 2, and authorities there cited; International-Great Northern Ry. Co. v. Casey (Tex. Com. App.) 46 S.W.(2d) 669, par. 8; Paris & G. N. Ry. Co. v. Stafford (Tex. Com. App.) 53 S.W.(2d) 1019, 1020, par. 1, and authorities there cited; Robinson v. G., H. & S. A. Ry. Co. (Tex. Civ. App.) 203 S. W. 395, 397, pars. 3 and 4; Galveston H. & S. A. Ry. Co. v. Quay, 27 Tex. Civ. App. 516, 66 S. W. 219, 221; Gulf, C. & S. F. Ry. Co. v. Holland, 27 Tex. Civ. App. 397, 66 S. W. 68, 69, 70; Heard v. Pratt (Tex. Civ. App.) 257 S. W. 660, 662, pars. 1 and 2; Brown v. Tyner (Tex. Civ. App.) 285 S. W. 674, 675, pars. 1 and 2. The testimony was voluminous and conflicting. We do not deem it necessary to recite it in detail. We have, however, carefully reviewed the same and have reached the conclusion that a jury issue was presented thereby, and that the findings complained of were not without support in the evidence.

██ Appellants present an assignment in which they contend that the court erred in rendering judgment for appellee on the verdict returned by the jury. The basis for this contention is that certain findings of the jury were conflicting and in legal effect destroyed each other. The substance of the findings of the jury in response to the issues prepared and submitted by the court has been hereinbefore recited. The court, however, appended to his charge a number of special issues requested by appellee, inquiring whether certain specific acts of the deceased constituted negligence and whether such negligence, if any, proximately caused or contributed to his death. While these several special requested issues were couched in language different from that used by the court in the issues on contributory negligence prepared and submitted by him, several of them were in legal effect the same. While the jury, in response to the issues prepared and submitted by the court, found that the deceased was guilty of acts of negligence which proximately caused or contributed to his death, the jury further found, in response to such special requested issues, that substantially the same negligent acts on the part of the deceased did not proximately cause or contribute to his death. The judgment rendered by the court in favor of appellee is not predicated on any finding of contributory negligence on the part of the deceased. It is predicated on affirmative findings that no negligent act of appellee was the proximate cause of his death. Contributory negligence is a defensive issue. It was therefore wholly immaterial whether appellee had succeeded in securing an effective finding or findings establishing such defense. The rule applicable to the situation under consideration is expressed in Millers' Indemnity Underwriters v. Schrieber (Tex. Civ. App.) 240 S. W. 963, 968, par. 3 (writ refused), as follows: "It is not true in all cases of conflicting answers by a jury that a valid judgment may not be entered upon the verdict as a whole, but the conflict or contradiction in the answers must be with reference to material and controlling issues in the case, and, if the answers as a whole be such as to leave without contradiction all necessary material and controlling issues found by the jury in favor of one of the parties litigant, judgment may properly be entered upon the verdict, notwithstanding conflicts or contradictions as to issues not controlling, or immaterial." See, also, Oden v. Texas & P. Ry.

Co. (Tex. Civ. App.) 9 S.W.(2d) 367, 371 (1st column); Emberlin v. Wichita Falls, R. & Ft. W. Ry. Co. (Tex. Com. App.) 284 S. W. 539, 540, par. 6; McCormick v. Southwestern Bell Tel. Co. (Tex. Civ. App.) 36 S.W.(2d) 1082, 1085, par. 2 (writ refused); Lanius v. Panhandle & S. F. Ry. Co. (Tex. Civ. App.) 7 S.W. (2d) 1099, 1100, par. 1; West v. Peters (Tex. Civ. App.) 287 S. W. 81, 84, par. 3; Bendelin v. Thompson (Tex. Civ. App.) 33 S.W.(2d) 220, 222, par. 3; Schaff v. Wilson (Tex. Civ. App.) 269 S. W. 140, 141; Furst-Edwards & Co. v. St. L. S. W. Ry. Co. (Tex. Civ. App.) 146 S. W. 1024, 1026, par. 1 (writ refused); Robinson v. G., H. & S. A. Ry. Co. (Tex. Civ. App.) 203 S. W. 395, 397, par. 4; Wofford v. Lane (Tex. Civ. App.) 167 S. W. 180, 181, par. 3; 25 Tex. Jur., p. 491, § 107; 4 C. J., p. 1055, § 3039, and notes 61 to 65, inclusive. The verdict of the jury was sufficient to support the judgment rendered by the court.

■ Appellants contend that the court erred in overruling their motion for new trial on the ground of newly discovered evidence. They presented the affidavit of one H. W. Marlin, who stated therein, in substance, that while walking north on Main street about 50 or 60 feet from the intersection of the same with Burnett street, he heard sharp blasts, which he termed danger signals, from appellee's engine; that he ran to such intersection and there had a full view of the crossing; that he was then about 150 feet west of the same; that the engine had already passed over the crossing and was then out of his sight; that box cars were still moving over the crossing; that the air had not then been applied but was applied shortly thereafter; that he saw the mangled form of the deceased scattered down the track south of the crossing; that he discovered an impression on the west rail of the track which he attributed to a shoe on the foot of the deceased; that the crossing at that point was full of holes and in a very bad condition. He further stated in said affidavit that he was formerly employed as a brakeman in railway service; that he quit such service in 1914 and had been engaged in farming ever since; that he was familiar with the speed of moving trains and with the time necessary to stop a train when moving at a particular speed; that appellee's train prior to the application of the air was moving at the rate of 45 miles an hour; that it could have been stopped by an emergency application of air in 150 or 200 feet; that had said train been moving at the rate of 20 miles an hour, it could have been so stopped in 80 feet. The testimony introduced disclosed that at the trial of the case five

separate witnesses testified for appellants that the crossing on appellee's track was pitted with holes and out of repair; that five separate witnesses testified for appellants that appellee's train, at the time its engine struck the deceased, was moving at the rate of from 40 to 45 miles per hour; that three separate witnesses testified that the air was not applied until after the engine had passed the crossing where the deceased was struck; and that one witness testified that he saw an impression on the west rail of the track which looked like a shoe had been dragged along it. The aforesaid testimony was explicit and as comprehensive on said issues as the affidavit of the newly discovered witness indicated that his testimony would or could have been. The only fact embraced in the affidavit that was not presented affirmatively by the appellants through their own witnesses at the trial was his estimate of the distance at which appellee's train could, by an emergency application of air, have been stopped. There is testimony tending to show that the length of a train and the weight of the load it carries are factors to be considered in estimating the distance in which it can be stopped. The newly discovered witness did not claim to have been informed on these points. He frankly stated that he had not been engaged in railroading for twelve years. We may concede that due diligence was exercised by appellants to discover witnesses who had personal knowledge of the accident and that the newly discovered witness was not found. However, there is no attempt to show any diligence to discover a witness or witnesses qualified to testify with reference to the distance at which a train such as the one that struck deceased could have been stopped in an emergency. Apparently such testimony might have been secured from any competent railway employee engaged in the active operation of freight trains.

■ The rule with reference to granting new trials on the ground of newly discovered evidence is that due diligence must have been used to discover such evidence prior to the trial without effect; that such evidence is not merely cumulative; that it is material and of such probative force as to render it probable that a different result would be reached if another trial were had. 20 R. C. L. p. 290; Hatchett v. Conner, 30 Tex. 104, 114; Texas & N. O. R. Co. v. Scarborough, 101 Tex. 436, 439, 108 S. W. 804. Except as to the single issue as to the time in which a moving freight train might be stopped in an emergency, all the testimony of the newly discovered witness was merely cumulative and in-

sufficient to require a new trial. Stewart v. Hamilton, 19 Tex. 96, 101; Ziegler v. Stefanek, 31 Tex. 30, 32; Keck v. Woodward, 53 Tex. Civ. App. 267, 116 S. W. 75, 79 (writ refused); Cain v. Corley, 44 Tex. Civ. App. 224, 99 S. W. 168, 169 (writ refused); Jones v. Wichita Valley Ry. Co. (Tex. Civ. App.) 195 S. W. 890, 891, pars. 1 and 2; Adams v. Stark (Tex. Civ. App.) 280 S. W. 1074, 1076, par. 6; Cox v. Windham (Tex. Civ. App.) 10 S.W.(2d) 136, 140, par. 9; Logan v. Hunt (Tex. Civ. App.) 41 S.W.(2d) 1041, 1044, par. 4; Mueller v. Hewgley (Tex. Civ. App.) 46 S.W.(2d) 426, par. 1. The testimony of the newly discovered witness with reference to the distance in which a moving freight train might be stopped was expert evidence. Such evidence is defined in 25 C. J. p. 177, as "an opinion by a qualified person on facts already proved, involving scientific or technical knowledge, and is not evidence of things done or measurements taken, which anyone is competent to prove, the weight to be given his evidence depending on his ability." In 46 C. J. p. 246, it is stated without qualification that a new trial will not be granted on account of newly discovered expert testimony. Numerous cases which support the text are cited in a note thereto. One of the cases so cited is Whittlesey v. Burlington, C. R. & N. Ry. Co., 121 Iowa, 597, 90 N. W. 516, 518, 97 N. W. 66, (top second column). That case involved the ditching of a passenger train due to a broken rail. The court, in denying a new trial on the ground of newly discovered evidence, said: "Complaint is made of refusal to grant a new trial on account of newly discovered evidence, but it is enough to say that such evidence related to matters of expert knowledge in regard to railroading, and could have been furnished by any expert witnesses, as well as by those named in the application. The showing was not sufficient to entitle plaintiff to a new trial in that respect." See, for further application of the rule announced: Martin v. Lown, 111 Kan. 752, 208 P. 565, 566, par. 4; Twenty-One Mining Company v. Original Sixteen to One Mine (C. C. A.) 265 F. 469, 473, par. 4; Pullin v. McGee, 143 Ga. 184, 84 S. E. 443, par. 3; Heintze v. Graham (Sup.) 116 N. Y. S. 548, 549; Reilly v. Haseltine, 127 App. Div. 64, 111 N. Y. S. 457, 459; Hinman v. Hinman, 283 Pa. 29, 128 A. 654, 655, par. 2; Goodwin v. Snyder, 70 Cal. App. 98, 232 P. 763, 766, 767; Moore v. Saunders, 88 Wash. 602, 153 P. 329, 330, par. 3. The probative force of newly discovered evidence and its probable effect upon the verdict at another trial are primarily matters for consideration and determination by the trial court. Having heard the whole trial, he is necessarily familiar with all the phases of the case and in a better position than any one else to pass upon such issues. He, in that connection, may take into consideration all the legal requirements for the granting of a new trial in such cases and measure the new evidence offered thereby. The granting or refusing of a motion for new trial on the ground of newly discovered evidence is therefore generally regarded as a matter resting within his discretion, and his action will not be disturbed except when such discretion is abused. We cannot say that the trial court in this case abused his discretion. Peters v. Williams (Tex. Civ. App.) 271 S. W. 430, 432, and authorities there cited; Wright v. Stone (Tex. Civ. App.) 273 S. W. 937, 938, and authorities there cited; Kelsey v. Myers (Tex. Civ. App.) 29 S.W.(2d) 855, 859, par. 7; 3 Tex. Jur. p. 1085, and authorities cited in note 11.

The judgment is affirmed.