**M. H. WAGNER, Appellant,**

v.

**GOODPASTURE, INC., Appellee.**

No. 8144.

Court of Civil Appeals of Texas, Amarillo.

June 7, 1971.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellant.

Ray D. Anderson, Brownfield, for appellee.

ELLIS, Chief Justice.

This is a suit brought by Goodpasture, Inc., plaintiff below and appellee herein, against M. H. Wagner as guarantor of a promissory note executed by Wagner Sprinkler Pipe Movers, Inc. The appellant, M. H. Wagner, raised the defense of lack of consideration. The case was tried before a jury which found consideration. Judgment was rendered for the plaintiff-appellee in the sum of $37,146.27, from

which appellant has brought this appeal on two assignments of error.

Evidence in this case indicates a series of transactions between the parties dating back to the early 1960's. Some of the facts are undisputed, some disputed, and, due to the length of time involved and the nature of the transactions, many of the circumstances and conditions surrounding the transactions are somewhat vague and uncertain. In the early portion of the period involved, L. V. Wagner, brother of appellant, M. H. Wagner, developed an invention of a mobile irrigation sprinkler system which was owned by Wagner Irrigation Pipe Movers, Inc. In December of 1962, L. V. Wagner assigned his patent rights in this invention to Goodpasture, Inc. Following this transfer the facts and circumstances become somewhat obscured.

It is undisputed that Goodpasture, Inc. (hereinafter sometimes referred to as "Goodpasture") manufactured and attempted to sell between 150 and 200 of the systems. Also, it is undisputed that the invention as it then existed was not commercially practicable, although there was some indication of efforts toward modification and improvement which might conceivably have enhanced the possibility of commercial success. As a result of the overall situation Goodpasture discontinued production and sale, while L. V. Wagner was insisting that Goodpasture resume production activities because of his anticipation of royalties as well as a personal desire to see his invention in operation as a successful project. It is further undisputed that during the months of September or October of 1963, L. V. Wagner again contacted Goodpasture urging the resumption of manufacturing operations. As a result of Goodpasture's negative response, L. V. Wagner and his brother, M. H. Wagner, offered to repurchase the patent and ultimately the parties reached an agreement on this matter. There was introduced into evidence a written agreement, dated December 17, 1963, entered into between the Wagners and Goodpasture, Inc., reciting (1) that simultaneously with the execution of such agreement, the Wagners had paid to Goodpasture, Inc., the sum of $11,500 in consideration for the assignment by Goodpasture of the patent rights to the invention for the irrigation systems to the Wagners; and (2) that as a part of the consideration for the execution of such assignment of patent rights, the Wagners agreed to purchase from Goodpasture, Inc., ten (10) laterals of pipe movers "as viewed and agreed upon between the parties" for a total price of $26,323.04. The agreement specifically recited that "The $26,323.04 will be the total consideration for the said ten lateral pipe movers."

The Wagners gained possession of ten systems which at the time of the agreement were in the fields of dissatisfied customers. Appellant contends that the Wagners were to remodel the systems for resale, pay the purchase price to Goodpasture, Inc., and retain the balance, if any. One system was sold for $2,500, and, according to the exhibits in evidence, this amount was paid to Goodpasture and credited to Wagners' outstanding account on April 8, 1964. Also, the exhibits indicate that the original note appearing in this series of transactions was dated September 21, 1964 and was in the principal sum of $25,402.43. This note was renewed and extended on three separate occasions, the third renewal note being dated December 11, 1967, and is the note upon which this suit was brought. This note was signed by the officers of Wagner Sprinkler Pipe Movers, Inc., and it was personally guaranteed by M. H. Wagner at the insistence of Goodpasture, Inc. M. H. Wagner contended that this note was given merely as an accommodation so that Goodpasture, Inc. could use it as collateral for loan purposes. Also, M. H. Wagner took the position that the systems in question were held on consignment by Wagner Sprinkler Pipe Movers, Inc., rather than on the basis of a purchase as indicated in the above mentioned agree-

ment. Goodpasture, Inc. took the position that at no time was it represented to M. H. Wagner that the note would not have to be paid but only that the time of payment was not of prime importance. The sum of $25,402.43 was carried as an open account on Goodpasture's books from the time the note in such sum was executed up to the time of the filing of the suit in 1970. The various exhibits introduced into evidence indicated no change in the amount outstanding during the period subsequent to the execution of the original note.

In December of 1968, Wagner removed the remaining nine systems to Goodpasture's property and requested in writing that such return of the nine systems be allowed as full credit upon the principal amount of the note. Upon receipt of the written communication from Wagner, Goodpasture, Inc., through its officer, Ken Muldrow, wrote two letters demanding that the equipment be moved and that the corporation had not accepted the systems in payment of the note. When Wagner failed to take the systems back, Goodpasture attempted to deposit them on Wagner's premises, but Wagner refused to allow entry. This series of events resulted in the filing of the lawsuit.

The case was submitted on special issues and the jury found in substance that:

1. The note sued upon was given in renewal and extension of the note executed September 21, 1964;

2. The appellant did receive something of value for executing the note;

3. The note endorsed by M. H. Wagner was not an accommodation to Goodpasture;

4. M. H. Wagner was not induced by false representations to sign the note;

5. Goodpasture carried the note on open account;

6. Goodpasture did not represent to M. H. Wagner that the signing of the note was solely for Goodpasture to pledge to the bank;

7. Goodpasture did not represent to M. H. Wagner that it would look solely to the pipe mover system and would not collect any note from him;

8. M. H. Wagner paid $11,500 to Goodpasture for the reassignment of the patent;

9. The $11,500 paid to Goodpasture should not be credited to the amount owed to Goodpasture under the note in question;

10. The ten systems charged out were on open account; and

11. The open account was never cancelled on the books when the note was signed.

The rule is well established that if there is evidence of probative force to support the answers made by the jury, the jury's findings should not be set aside by the court. Various exhibits introduced into evidence indicate that the purchase price for the systems was charged out as a part of the Wagner account with Goodpasture. Although the exhibits do not completely reflect each and every transaction in chronological order, it appears obvious that after allowing various debits and credits, including the "rounded" sum of $26,000.00 indicated as a debit for the ten pipe mover systems and the credit on the account for the sum of $2,500 for one system sold, along with various other debits and credits, the net sum of the outstanding account was $25,402.43, which is the identical sum of the original note bearing the date of September 21, 1964. There is testimony by John H. Thomas, office manager for Goodpasture, to the effect that there were various other amounts involved in the account which were not discussed at the time of the original agreement. Also, it is here noted that the date of the check in the sum of $11,500 (obviously the $11,500 mentioned in the writ-

ten agreement) was approximately nine months prior to the execution of the note by Wagner Sprinkler Pipe Movers, Inc. for the exact sum of $25,402.43. The $11,500 check was dated January 2, 1964, being only a few days after the execution of the agreement referring to the sum of $11,500 as consideration for the assignment of the invention, along with the other recitations in the agreement concerning the purchase of the ten laterals of pipe movers in their then existing condition for the price stated as being a part of the consideration for the reassignment of the patent. Also, there was testimony by Weldon Carden, the comptroller for Goodpasture, that Goodpasture received such payment of $11,500 in January, 1964, and that credit in such amount was given at that time on Wagners' account. It is also noted that Thomas indicated that Wagner had acknowledged the existence and justness of the debt evidenced by the note on numerous occasions after the payment of the $11,500 check dated January 2, 1964. Also, it is here noted that among the various exhibits is a statement dated December 29, 1965, evidencing a charge by Goodpasture against M. H. Wagner for $2,027.92 as the interest calculated on the original $25,402.43 note, dated September 21, 1964.

■ There is considerable controversy concerning the truth and falsity of the written instruments involved in this case. It is here noted that the statement, "secured by sprinkler irrigation systems," was typed on the note at Wagner's insistence. Also, there were certain inconsistencies between Wagner's statements on deposition and at the trial on the vital subject of "consideration." Also, Goodpasture stated that the note was for "$25,000 new money" and was given to "wipe the slate clean." He further stated that Wagner was entitled to credit for the $11,500 paid, but he did not testify that such $11,500 should be credited against the outstanding note, which according to the records of the account, was executed about nine months

after such payment had been made. Both parties admit in their briefs that there are many gaps and uncertainties resulting in questions regarding much of the evidence submitted. These matters give rise to inferences which the jury could draw regarding the respective circumstances and theories of the parties which the jury could accept or reject. The weight and credibility of the testimony of the witnesses and other evidence was clearly for the jury's determination. The jury was in a position to observe the demeanor of the parties, consider the period of time involved and all the circumstances surrounding the various transactions and draw all reasonable inferences therefrom in resolving conflicts or in accepting or rejecting either party's theory of the case. The jury determined that there was consideration for the note and rejected both contentions of appellant that the execution of the note was an accommodation only, as well as the consignment theory. The jury further found that the $11,500 paid by appellant should not be credited on the note. After carefully reviewing all the evidence, we hold that there was sufficient evidence of probative force to support the jury's basic findings.

Appellant contends in his first assignment of error that the court erred in overruling his motion for new trial based on the ground of newly discovered evidence. In the hearing on the appellant's amended motion for new trial, there was testimony to the effect that after the trial appellant and two other parties went to appellee's premises and discovered that the systems had been completely disassembled and scrapped. Appellant contends that this evidence lends new light to the question of whether the systems were received as credit upon the note in controversy and also upon the question of consignment.

■ The case of Allen, et al. v. Texas & N. O. R. Co., 70 S.W.2d 758 (Tex. Civ.App.—Waco 1934, no writ) sets out the following criteria to be met in determining the question of granting a new trial

on the ground of newly discovered evidence:

"The rule with reference to granting a new trial on the ground of newly discovered evidence is that due diligence must have been used to discover such evidence prior to the trial without effect; that such evidence is not merely cumulative; and that it is material and of such probative force as to render it probable that a different result would be reached if another trial were held. 20 R.C.L. p. 290; Hatchett v. Connor, 30 Tex. 104, 114; Texas & N. O. R. Co. v. Scarborough, 101 Tex. 436, 439, 108 S.W. 804."

The decision as to whether the newly discovered evidence meets the above requirements is vested in the sound discretion of the trial court and the ruling will be disturbed only when the abuse of discretion is shown. McCardell v. Hartford Accident and Indemnity Co., 360 S.W.2d 831 (Tex.Civ.App.—Beaumont 1962, Affirmed 369 S.W.2d 331 (1963)); Sarah Coventry, Inc. v. Blanche-Ette Co., 381 S.W.2d 636 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); Jarvis v. Jenkins, 417 S.W.2d 383 (Tex.Civ.App.—Waco 1967, no writ); Sovereign Camp, W. O. W., v. Shires, 44 S.W.2d 812 (Tex.Civ.App.—Beaumont 1931, no writ). Also see 4 Tex.Jur.2d, Appeal and Error-Civil, Section 826.

■ A significant question that it presented by the newly discovered evidence in this case is whether a different result would be reached if another trial were held. The findings clearly demonstrate that M. H. Wagner by personally signing and becoming a guarantor on the note indebted himself to Goodpasture in the amount of $25,402.43. Also, the fact that the systems in question were destroyed does not change the obligations that existed between the parties to this action, and, therefore, it does not appear that the post-trial facts are of such decisive and conclusive character as to render probable a

different verdict. An examination of the whole record reveals that the rights of the parties have been determined by sufficient evidence of probative force presented to the jury. To authorize revision of a court's action on a motion for new trial, it must appear that the ruling was manifestly wrong. Kountze v. Tucker, 103 S.W.2d 828 (Tex.Civ.App.—El Paso 1937, writ dism'd); McCaskey v. McCall, 226 S.W. 432 (Tex. Civ.App.—El Paso 1920, no writ). Also, in the instant case the testimony in the hearing for the motion for new trial disclosed that a suit for conversion has already been filed, indicating the existence of a legal remedy. We hold that the trial court did not abuse its discretion in failing to grant the motion for new trial.

■ Appellant contends in his second assignment that the court erred in entering judgment without allowing the sum of $11,500 as credit on the note. Also, appellant contends that the court erred in failing to disregard the jury's answers to Special Issue No. 15 (finding that Wagner was not entitled to such credit) because there was no evidence to support the finding and that all the evidence showed that defendant was entitled to such credit as a matter of law. We do not agree with this contention. As previously indicated, the agreement originally entered into by the parties reciting such payment, together with the evidence of such sum having been paid and credited on Wagners' account, along with all the circumstances, the various transactions and reasonable inferences therefrom provide adequate evidence of probative force to support the jury's findings. It appears that there are two separate aspects to the consideration question: (1) The sale of the ten irrigation systems and (2) the reassignment of the patent. The jury could reasonably infer from the evidence that the renewal of the note for $25,402.43 dealt with the outstanding account, including the purchase of the irrigation systems, and could be reasonably considered separate and apart from the $11,500 recited in the agreement. Also,

there is evidence showing that the $11,500 was received by the appellee and was credited on the appellant's account some nine months prior to the execution of the note in question.

In view of the foregoing, appellant's points of error are overruled and the judgment of the trial court is affirmed.