## BENDELIN et al. v. THOMPSON.
### No. 2463.

Court of Civil Appeals of Texas. El Paso.
Nov. 6, 1930.

Rehearing Denied Dec. 18, 1930.

H. Potash and J. Walker Morrow, both of El Paso, for appellants.

Jones, Goldstein, Hardie & Grambling, of El Paso, for appellee.

PELPHREY, C. J.

The statement of the nature and result of the suit incorporated in appellants' brief, being approved by appellee, we will adopt same for the purpose of this opinion.

"This was a suit by S. D. Bendelin et al (Diane Bendelin), appellants, against F. G. Thompson, for damages for personal injuries sustained by plaintiffs by reason of a collision of the automobile which defendant was driving with the automobile owned and operated by plaintiffs, said collision having occurred on the Texas Main Highway No. 1, about three miles West of Fabens, Texas, on the 20th day of October, 1929.

"By an order of the trial court, the cause of action of Diane Bendelin was consolidated with the cause of action of S. D. Bendelin. This appeal is, therefore, styled S. D. Bendelin, et al, appellants, v. F. G. Thompson, appellee.

"Plaintiffs alleged, among other things that they were traveling in an Easterly direction on the public highway in a car owned by them, at a rate not exceeding thirty-five miles an hour, and while so proceeding, the defendant, F. G. Thompson, drove an automobile, traveling in a Westerly direction, on to the South and left-hand side of said road against the car in which plaintiffs were traveling East; that defendant was attempting to pass another automobile traveling in the same direction as the defendant, when the car of plaintiffs was less than fifty yards from the car of defendant; that the collision occurred on plaintiffs' right hand side of said road, or, in the alternative, in the center of said road, to which point the plaintiffs were forced by reason of the defendant's unlawful entry on said left-hand side of the road immediately in front of the plaintiffs, and to which point the plaintiffs drove in an effort to avoid the collision caused by defendant's negligence, aforesaid. That as a result of said negligent acts of defendant, plaintiffs' automobile, of the value of Seven Hundred Fifty ($750.00) Dollars was totally destroyed, plaintiff was lacerated, bruised, and his skull fractured, necessitating medical care and hospital expense in the sum of Five Hundred ($500.00) Dollars; plaintiff, S. D. Bendelin's clothing of the value of One Hundred Fifty ($150.00) Dollars was destroyed, and the said S. D. Bendelin lost as a result of said negligence, two months' salary in the sum of Six Hundred ($600.00) Dollars; that his face has been permanently marred by unsightly scars, to his total damage in the sum of Eighteen Thousand ($18,000.00) Dollars. That plaintiff, Diane Bendelin, a feme sole, was driving the car owned by S. D. Bendelin, and that by reason of the negligence of the defendant, as aforesaid, she suffered injuries which necessitated her confinement in the hospital, and which have left permanent scars, and by reason of such injuries and suffering she has been damaged in the sum of Five Thousand ($5,000.00) Dollars. That the injuries to the plaintiffs resulted from appellee's negligence, as is more clearly set out in plaintiffs' amended and Original Petitions.

"Appellee answered by way of General demurrer and general denial, and for further answer, alleged, among other things that the car of plaintiffs was being driven at an excessive rate of speed and that defendant turned his car to the right-hand side of the road to avoid a collision, but the car of plaintiffs was turned sharply to the left-hand side of the road and collided with the car in which defendant was riding; that the action of plaintiffs in permitting the car in which they

were riding to be operated at such a high and excessive rate of speed was negligence, and said negligence proximately caused the injuries complained of by plaintiffs.

"Appellee filed a cross-complaint alleging negligence of plaintiffs and bodily injuries to his damage in the sum of Five Thousand Dollars.

"Plaintiffs, S. D. Bendelin and Diane Bendelin, appellants herein, filed a supplemental petition and answer to defendant's cross-action, by way of general demurrer and general denial.

"Trial was had, beginning on the 10th day of February 1930, before a jury, and the verdict of said jury was rendered on the 11th day of February, 1930, upon special issues submitted by the court to the jury, and upon said verdict of the jury judgment was rendered denying damages in any sum to plaintiffs and denying damages in any sum to defendant upon his cross-action. To which judgment plaintiffs excepted and filed their motion for new trial, which said motion for new trial was overruled, and plaintiffs then and there excepted and gave notice of appeal to this court."

### Opinion.

Appellants' brief contains fifteen assignments of error, but the eight propositions advanced by them are all based upon the last assignment, and raise the question of misconduct of the jury.

The contention of appellants, as set forth in their propositions, is that the judgment should be reversed because (1) the jury first decided upon the result which the suit should have, and then answered the interrogatories so as to bring about such result, and did not base their answers upon the evidence adduced in the trial, and (2) that it was misconduct for one of the jurors to make statements to the jury as to the width of the road at the place of accident, there being no evidence as to the facts shown to exist by his statements, and for a juror to take into consideration his own knowledge in reference to said width in arriving at his verdict, in the absence of any evidence as to such facts.

Appellee contends that appellants' propositions, not pointing out any concrete points arising in the case and being only abstract propositions of law, should be disregarded; that, although members of the jury may have entertained the opinion that both parties were guilty of negligence and that neither should recover, yet, by passing upon each question upon its individual merits there could be no such misconduct as would justify a reversal; and that the statement of the juror as to his knowledge of the road at the place of accident, not being materially different from the evidence adduced on the trial and being as to a matter collateral to the real issues, the finding of the trial court that the verdict should not be set aside should be upheld.

The issues submitted and the answers there were as follows:

"Question No. One: Do you find from a preponderance of the evidence, that at or just before the time of the accident complained of, the defendant, Thompson, drove or was driving his automobile on the left-hand side of the highway while such highway was not clear and unobstructed for a distance of at least fifty yards ahead? Answer: Yes.

"Question No. Two: Was the fact that he did so, if he did, a proximate cause of the plaintiff's injuries? Answer: Yes.

"Question No. Three: Do you find from a preponderance of the evidence that the defendant, Thompson, at or just before the time of the accident complained of in plaintiff's petition, was driving his automobile at a greater rate of speed than forty-five miles an hour? Answer: No.

"Question No. Four: Do you find from a preponderance of the evidence that the fact that he was so driving his car, if he did, was a proximate cause of the plaintiff's injuries? (Not answered.)

"Question No. Five: Do you find from a preponderance of the evidence that, at or immediately prior to the time of the collision, Diane Bendelin was driving the Chrysler car at a speed in excess of forty-five mlies an hour? Answer: No.

"Question No. Six: (No answer called for.)

"Question No. Seven: Do you find from a preponderance of the evidence that Diane Bendelin, just prior to the collision between the Hudson and the Chrysler, drove the Chrysler car on to the north side of the highway? Answer: Yes.

"Question No. Eight: Do you find from a preponderance of the evidence that the act of Diane Bendelin in driving her car on the north side of the highway just prior to the accident, if she did so drive it, was negligence? Answer: Yes.

"Question No. Nine: Do you find from a preponderance of the evidence that such negligence, if any, in said Diane Bendelin proximately contributed to cause the collision between the Chrysler and the Hudson? Answer: Yes.

"Question No. Ten: What sum do you find, if paid now, would reasonably compensate the plaintiff, S. D. Bendelin, for the damages sustained by him? Answer: None.

"Question No. Eleven: What sum do you find, if paid now, would reasonably compensate the plaintiff Diane Bendelin for the damages sustained by her? Answer: None.

"Question No. Twelve: What sum do you find, if paid now, would reasonably compensate the defendant, F. G. Thompson, for the damages sustained by him? Answer: None."

The witness Winner, after drawing a map showing what he says was the position of the cars after the collision, testified as follows: "As to their (the cars) not being here near the edge of the road at all, I will say I am positive of this, my main reason for seeing the position was when I took the lady to leave for Clint, I had to come out here and come off the pavement here, there is a little shoulder, I came out to get by there, and I think this car had to go around, there was glass. I am positive this wasn't the shoulder I went by, why would I come on the wrong side? I would not say they came together over here, right by this cement shoulder on the north side of the road, no sir, I say this is where, as I saw the accident."

It does not clearly appear from the above whether the witness, when he testified that there was a small shoulder, was referring to the north or the south side of the road. He says the cars were not right by the cement shoulder on the north side of the road, and the drawing made by him and introduced in evidence shows the cars to have been near the center of the road, so that, by using the shoulder, which he says he did, he might have passed on either side. Exactly what the witness meant when he asked, "Why would I come on the wrong side?" is also not made clear by the record before us. He was coming west toward Clint, and the wrong side of the road would therefore be the south side, yet, under the provisions of article 801, subdivision C, of the Criminal Statutes (Pen. Code), it was the duty of the witness to pass to the left of the automobiles, and passing them on the right-hand side would have been the wrong side for him to take, and, if it became necessary for him to go onto the south side of the road, it would cease to be the wrong side.

■ The trial court heard the witness testify and saw him indicate on the drawing what he meant by his testimony, and, the record here being in narrative form, we are unable to say just what the witness meant. If he meant to say that he passed the cars on the south side, which would have been the right side for him to use under the above statute, then the court correctly refused to grant appellants a new trial because of the statements of the juror as to their being a shoulder on the south side and there being room enough for three cars on the road.

There being, from the record before us, so much doubt as to just what the witness testified to, we, in support of the trial court's action, will presume that the evidence of the witness was to the effect that there was a shoulder on the south side of the road.

The testimony of the jurors as to whether they had previously decided how the case should terminate and were answering the interrogatories to bring about such result is very conflicting, and the trial court, having heard the witnesses testify, was in a much better position to judge of their credibility and the weight to be given to their testimony than we could possibly be from a mere examination of the record.

Appellants lay great stress upon the fact that their answers to the last three issues, being against the uncontradicted testimony, show that they were answering the issues so as to carry out a previous agreement that neither party should recover.

This is indeed a plausible argument, but, there being evidence here showing that the answers were made under a mistaken belief by the jurors any amount found by them as damages would be recovered by the party shown to have been damaged, and that such findings were made after they had already decided that both parties had been guilty of negligence which had proximately caused the collision, the force of the argument fails.

■ Matters relating to the conduct of a trial are largely within the discretion of the trial court, and rulings on these matters will not be disturbed by a reviewing court except for a manifest abuse of discretion. 3 Tex. Jur. p. 1079. This principle applies to rulings of the trial court on the matter of misconduct of the jury.

As said in 3 Texas Jur. § 761: "While orders granting or denying a new trial for misconduct on the part of the jury are, to a great extent, within the discretion of the trial court, the discretion is not an arbitrary one; it is subject to review by an appellate tribunal, but the action of the trial court will not be disturbed unless there has been an abuse of discretion or the rights of the parties have been disregarded. Indeed, it requires a very strong case of misconduct on the part of the jury for a reviewing court to interfere with the ruling of the trial court."

The Supreme Court in the case of Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606, in discussing their right to pass upon the question of misconduct, held that they might review the exercise of the trial court's discretion in granting or refusing a new trial in cases where it clearly appeared that the rights of the parties had been disregarded.

■ The rights of appellants do not appear to us to have been clearly disregarded, and they are not in a position to complain of the jury's findings on the question of the amount of damages unless they first show that there was some vice connected with the finding of the jury on the question of their negligence. If the jury properly found that both parties had been guilty of negligence and that such negligence was the proximate cause of the injuries sustained by them, then there could be no recovery by either party, and a finding as to the amount of damage sustained would certainly be immaterial.

Finding that the trial court did not abuse its discretion in refusing to grant a new trial, the judgment is affirmed.