### McCORMICK v. SOUTHWESTERN BELL TELEPHONE CO.

No. 12423.

Court of Civil Appeals of Texas. Fort Worth. Feb. 7, 1931.

Rehearing Denied March 21, 1931.

Adams & Jones, of Gainesville, for appellant.

Nelson Phillips and C. M. Means, both of Dallas, and W. D. Garnett, of Gainesville, for appellee.

DUNKLIN, J.

Walter D. McCormick, suing as next friend of his minor son, Walter D. McCormick, Jr., to recover damages resulting from personal injuries sustained by the minor, has appealed from a judgment in favor of the Southwestern Bell Telephone Company, defendant in the suit, whose alleged negligence was charged to be the proximate cause of those injuries.

Following are the facts which gave rise to the litigation: A two-story brick building, situated in the city of Gainesville, and known as the "Flats," with twelve living apartments therein, fronts south on Main street; in the same block there are business houses fronting north on another street, and between those buildings and the flats on the south there is an open passway, about 40 feet wide, running east and west through the block. Occupants of different apartments in the flats had access to that open passway through the rear openings of those apartments. W. D. McCormick, Sr., together with his family, which consisted of himself, wife, daughter, and minor son, Walter D. McCormick, Jr., about ten years old, occupied one of the apartments in the flats. The rear or south wall of a brick building occupied by the Nash-King Motor Company abutted on the open space running through the block. The Southwestern Bell Telephone Company owns and maintains a system of telephone wires and equipment in the city of Gainesville, where it renders telephone service to its citizens. To that end its wires are strung in and about the buildings, and, in order to construct and properly maintain them, it is necessary to use ladders.

On December 18, 1928, employees of the telephone company placed a ladder, consisting of several sections, in the open way between the Nash-King Motor Company and the flats, where it was used in doing work on the telephone wires; and on the evening of that day, and upon cessation of such work, they took the sections of the ladder apart and stacked them against the wall of the Nash-King Motor Company building, and, after covering them with linoleum, left them there. The sections of the ladder were each about 6 feet long, and were equipped with an interlocking device for fastening them together so as to make an extended ladder; and they were so fastened when the employees of the telephone company used them at that location. In so using them, the ladder was leaned against the brick wall of the Nash-King Motor Company building. After doing that work, the employees of the telephone company were called away for other work at another location.

Children who lived in the flats were accustomed to play in the open space between the buildings, and on December 21st Walter D. McCormick, Jr., and his playmate, Hal Timmes, after their return from school in the afternoon, undertook, for their amusement, to connect together three different sections of the ladder and lean the same against the wall of the Nash-King Motor Company building, and then climb it.

No one witnessed the accident except those two boys, and the manner of its happening was detailed by plaintiff's minor son, Walter, who was introduced as a witness for plaintiff, as follows:

"After I spoke to Hal we went out in the back and played. We found the ladders when we got back there; they were short ladders. They were out there in the back yard piled up against the building, the Nash-King Motor Company's building. I mean the brick building that is next to that open space. We took three of those ladders off the stack and tried to put them together. There was a device on the side of the ladder to hook them together and make the three ladders into one. We didn't get them hooked good. We put them up against the building after we got them hooked; I mean that brick building north of the open space there. We didn't get them up very high. The end of the ladder that was up off the ground was about as high on the brick building as your head (Mr. Adams is a man about 6 feet tall) and the other end was on the concrete—it was slanting down south. Both of us lifted the ladder up and I started to go up it but I came down. Hal was under the ladder trying to hold it up when I started to go up it. I started up the ladder and got up about two or three rungs and came back down. Then I went under the ladder to hold it up and Hal went up it; he climbed up the ladder. I don't remember how far up he got when the bottom of the ladder came uncoupled and fell on me. The whole ladder came down on me. The section that was on the ground came uncoupled from the two that were up against the

**1084**

wall. All the sections of the ladder fell on me and Hal came down with them; I don't know whether he fell on me or not, I don't remember. I was hurt; I received injury to the broken leg that I have had ever since that time. I hallooed when I got hurt and my sister came out of the house. I was not under the ladder when it fell on me. I wasn't under the ladder when my sister came out; Hal drug me out. I was under it when it fell on me and Hal Timmes drug me out from under it."

Hal Timmes, the other boy, was introduced as a witness for defendant, and his testimony was substantially to the same effect as that quoted above except as indicated in this portion, in which Walter was referred to as "Junior":

"When we put the ladder up against the wall I climbed it first. Junior was under the ladder holding it when I climbed it. We wasn't sure it would stay against the wall so we were holding it for each other. I climbed up about seven or eight rungs, I guess, then I came back down. The ladder didn't fall with me. Then I went under the ladder and held it for Junior. I was holding on to one of the rungs. Junior climbed the ladder and I was holding it because I was afraid it would slip out. Junior climbed on up the ladder. I am not so sure how high up he got, I guess about two or three rungs higher than I did, then the ladder slipped out. None of the sections slipped out that I know of. The bottom slipped out and come down from the wall. Junior was just standing on the ladder there at that time. His leg slipped through the ladder, then it just come on down and I jumped out from under it and it hit me on the arm. Junior was on the ladder when it fell, and it fell on his leg."

Anderson King and A. W. Stark owned the building in which the Nash-King Motor Company did business, and also the flats, together with the intervening open space where the accident happened. King testified that the tenants of the flats had access to the open space which was used by the grocer, butcher, and others having business with the occupants of the flats, who also used the open space for storing their garbage. He testified:

"I don't know whether the employees of the Southwestern Telephone Company were working on a cable at the back of my building or not that was running across the Flats. I had no objection to their being there and having ladders to work on cable with at the back of my building. I know those cables are back there and that they worked on them when ever it is necessary for the telephone service. And had permission been requested it would have been given to them."

It thus conclusively appears that the employees of the defendant company, in using the open space between the buildings for work on the defendant's cable, were rightfully there, and were not trespassers, as plaintiff insists in his brief.

Plaintiff alleged that the work which defendant's employees were doing in the open space between the buildings consisted of placing and putting up wires, cables, and other fixtures and improvements to enable the defendant to properly maintain and operate its telephone system in said city of Gainesville; that defendant's employees negligently left the ladders in the open space where they were accessible to plaintiff's son and other children; that the same were unusually attractive to children, and did attract plaintiff's son; that the same constituted an unusually attractive nuisance; that the defendant's employees well knew, or by the exercise of prudence should have known, that the ladders left as they were would, in all reasonable probability, attract children who would attempt to use them by coupling together the different sections; and were guilty of negligence in so leaving the ladders, which was the proximate cause of the injury sustained by plaintiff's son.

In addition to a general denial, defendant specially pleaded that the work done by its employees on the cables in question was necessary to the maintenance of the telephone lines, and that, after the ladders were used by them, they were taken apart and the several sections were stacked in a safe manner; that the act of plaintiff's son and his companion in removing the linoleum and undertaking to join the sections of the ladder together and then use it was all done without the knowledge or consent of defendant's employees.

The case was submitted to a jury on special issues, which, together with the findings thereon, were as follows:

"1. Were the sectional ladders that were left by the defendant company stacked against the brick wall on the north side of the open space behind the Flats of such nature and character as would reasonably be calculated to attract children of the age of the plaintiff, to use and attempt to use those ladders? Answer: No.

"2. Were the employees of the defendant company negligent in leaving the said ladders in the manner they were left against said brick wall on the north side of the open space, at the rear of the Flats? Answer: No.

"3. Was such negligence, if any you have found, the proximate cause of the injuries sustained by the plaintiff? Answer: ———.

"4. What sum of money if paid now would reasonably compensate the plaintiff, Walter D. McCormick, Jr., for the injury received by him on the occasion in question, taking into consideration exclusively (a) mental anguish and physical pain and discomfort, if any, suffered by him as a direct result of such injuries to the date of the trial, and (b) physi-

cal pain and discomfort, if any, which you may believe he will reasonably suffer in the future, if any, as a direct result of such injuries? Answer: None."

Numerous assignments of error and propositions thereunder are presented in appellant's brief, presenting the contention that the evidence showed without dispute, as a legal conclusion, that in leaving the ladders in the open space, in the manner and under the circumstances already related, the defendant was guilty of negligence, which was the proximate cause of the injury, for which a recovery was sought; and that therefore the court erred in submitting issues 1, 2, and 3 as controverted issues for determination by the jury.

In the absence of any statute which would make such an act negligence per se, it is manifest that the determination of that issue was exclusively the province of the jury. We deem it hardly necessary to cite authorities to sustain that conclusion, but we will refer briefly to one.

In Lee v. International & Great Northern Ry. Co., 89 Tex. 583, 36 S. W. 63, 65, the following is said:

"Negligence, whether of the plaintiff or defendant, is generally a question of fact and becomes a question of law, to be decided by the court, only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question. In other words, to authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it."

Sioux City, etc., Ry. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, was the parent "turntable" case in the United States, in which the doctrine of liability to children for injuries resulting from maintaining what are termed "attractive nuisances" was announced. And in that case it was held that whether the railroad company was guilty of actionable negligence in maintaining the turntable, which the court assumed as unquestionably attractive to children in play, was for determination by the jury, even though it further appeared that, prior to the injury, several boys had played at the same place with the knowledge of the defendant's employees. And the court specifically overruled the contention that, since the facts were undisputed, the trial court should have instructed a verdict in favor of the defendant. See 20 R. C. L. pp. 80, 81.

Indeed, as shown in 20 R. C. L. p. 89, par. 79, many authorities hold that, as a general rule, the doctrine of attractive nuisances has no application in suits for injuries resulting from the use of simple tools and appliances, such as ladders, gates, and the like. Whether or not that announcement is correct as a legal conclusion, it is not necessary for us to determine here. We advert to it merely to support our conclusion that in this case it was, to say the least, the province of the jury to determine the issues of negligence on which plaintiff's suit was predicated.

While it is true, as insisted by appellant, that the evidence conclusively showed that the minor sustained serious injuries as the result of the accident, yet the finding of the jury in answer to issue No. 4, which was in effect to the contrary, resulted in no harm to plaintiff, since, by reason of the findings on issues Nos. 1 and 2, no right of recovery was shown. Perhaps the jury made the finding on issue No. 4 upon the supposition that to find otherwise might entitle plaintiff to recover, independently of the other findings. But whether or not such a surmise can be indulged is immaterial, in view of the findings on issues Nos. 1 and 2, which have ample support in the evidence, including, in addition to the facts and circumstances recited above, the uncontradicted testimony of defendant's employees that they had never seen any children using the open space between the buildings as a playground.

Accordingly, all assignments of error are overruled, and the judgment is affirmed.