**TOWER CONTRACTING COMPANY, Inc.,**
of Texas, Appellant,

v.

Hunter FLORES, d/b/a Freeport Machine
and Boiler Shop, Appellee.

No. 12987.

Court of Civil Appeals of Texas.

Galveston.

Oct. 4, 1956.

Rehearings Denied Oct. 25, 1956.

Bell, Camp & Gwin and C. R. Bell and Lawrence P. Gwin, Bay City, for appellant.

Turner, Rodgers, Winn, Scurlock & Terry and Frank J. Scurlock, Dallas, for appellee.

GANNON, Justice.

Tower Contracting Company, Inc., of Texas, the appellant, appeals from a money judgment rendered against it in favor of appellee, Hunter Flores, in amount of $21,-339.13 with interest and costs, being the balance found to be due on the contract and for extras under a certain sub-contract whereby appellee bound himself to do certain work for appellant in connection with a primary contract to which appellant had bound itself.

The parties, both the plaintiff Flores and the defendant Tower Contracting Company, Inc., of Texas, are in the general contracting business. Both bid on a contract to be awarded by the Corps of En-

gineers of the United States Army for repair of the Colorado River Flood Gates on the Intracoastal Waterway in Matagorda County. The defendant was the successful bidder. However, upon the contract being awarded it, the defendant sub-contracted a substantial part of the work to the plaintiff Flores.

The sub-contract is not as artfully drawn as might be, but in the light of the evidence and the plans and specifications for the work prepared by the Corps of Engineers governing the primary contract, it may be followed without difficulty. The writing appears upon three sheets of a purchase order form of defendant, each of which sheets bears the signatures of the parties. We reproduce the contract and attach it to this opinion as Exhibit A.

Following completion of all the work required under the sub-contract, the parties fell in dispute in respect to the amount owing Flores by Tower Contracting Company, Inc.

The dispute between the parties, as it is presented here, arises principally under Items 4 and 7 of the sub-contract. Flores furnished the bolts, nuts and galvanizing required by Item 4 of the contract, denominated: Removal and Reinstallation of Rotten Timber Fenders. However, he claimed these to be extras and sought compensation therefor over and above the contract price for this item. In respect to Item 7 of the contract providing for the fill—though the parties are not in dispute that the work required thereby was plainly ascertainable from the Technical Provisions of the primary contract, Section 1, paragraph 1-04 and from the site plan No. 1/1, still Flores claims as an extra compensation for some 10,248 cubic yards of compacted dirt required to complete the fill provided for under Item 7 because there was contained in the plans and specification inviting bids on the primary contract and in connection with the item of the fill, an estimate of the Corps of Engineers (evidently made from the site plan drawings and the Technical Provisions) that it would require 22,000 cubic yards of compacted dirt to complete the fill. Actually 32,248 cubic yards were required.

This estimate appears in the papers inviting bids on the primary contract, as follows:

| "Description | Estimated Quantity | Unit |
|---|---|---|
| Fill | 22,000 | C.Y." |

Plaintiff's pleading contains no allegation of fraud, accident, or mistake. There is no prayer for rescission of the contract. His suit is on the contract as drawn so far, as, under his construction, the contract covers the work done, and on express contracts for the extras; supplemented in respect to the extras alone, by a count in quantum meruit.

The parties construed the contract as requiring the work on the fill to be completed by July 25, 1954. On July 8, 1954, while the work was in progress, the Area Engineer of the Corps of Engineers complained in writing to Tower Contracting Company that in his opinion a diligent effort was not being made to prosecute the work in completing the fill. On the same day Tower Contracting Company wired Flores, cancelling his contract. The wire is as follows: "You are advised your contract with us is cancelled this date by directive of the corps of engineers work to be completed and backcharged to your account." In point of fact, the Corps of Engineers had not, as it had the right to do, directed the cancellation of the sub-contract, but had only requested that additional or more suitable equipment be employed in the work of completing the fill. Two days later, on July 10, 1954—appellant in the meantime having sub-contracted the completion of the work on the fill to Hall & Redinger—Hall & Redinger moved in its equipment and proceeded on the work

of completing the fill. However, Flores refused to recognize the cancellation of his contract as valid and he continued on the job. The work was completed within the time limited under the contract by the combined work of Flores and Hall & Redinger. It is Flores's claim that he could have timely completed it alone had he been permitted to do so.

Tower Contracting Company, by its pleadings, cross-acted by way of offset for the amount it claimed it had been out on account of additional equipment put on the work by its second sub-contractor, Hall & Redinger, to wit: $10,219.93. This cross-action and offset rested on Tower's contention that Flores was proceeding about the work on the fill with insufficient dispatch to complete it on time so as to avoid a $25 a day penalty for delay, provided for in the primary contract, and that this constituted a breach of the contract by Flores. There was evidence from which the jury could have found that the under-estimate of 22,000 cubic yards of dirt required to complete the fill was discovered by Flores at or about the commencement of the work, or shortly thereafter; that the error was called to the attention of the Tower Contracting Company by Flores, and that at the time Flores was assured by Tower "that he would make it right with us"—"that there would have to be an adjustment on that extra yardage." It is undisputed that these statements were made after Flores bound himself to the sub-contract. Flores testified that his lump sum bid of $8,250 for fill was based on the erroneous estimate of 22,000 cubic yards of dirt required to complete it, or at the rate of 37½ cents per cubic yard.

So far as is material here, the case was submitted to the jury on the following special issues, which were answered as indicated:

2. "Do you find from a preponderance of the evidence that the bolts, nuts and galvanizing furnished by Flores in connection with Item 4 (Removal and Reinstallation of Rotten Timber Fenders) were extras as that term is herein defined?

"Answer Yes or No."

Answered "Yes".

3. "Do you find from a preponderance of the evidence that the additional 10,248 cubic yards of compacted dirt required to complete the fill under Item 7 (Fill) was an extra as that term is herein defined?

"Answer Yes or No."

Answered "Yes".

4. "What do you find from a preponderance of the evidence to be the reasonable value of furnishing the extra 10,248 cubic yards of dirt, if you have found it to be an extra?

"Answer by stating the amount, if any, in dollars and cents."

Answered "$3,843.00".

5. "Do you find from a preponderance of the evidence that under all the circumstances which existed on or prior to July 10, 1954, the plaintiff was proceeding with due diligence under his contract with the defendant to fill the by-pass channel?

"By the term 'due diligence' as used herein is meant such diligence as would be required for the plaintiff to complete the fill in accordance with the terms and provisions of the contract between plaintiff and defendant and the plans and specifications.

"Answer Yes or No."

Answered "Yes".

6. "Do you find from a preponderance of the evidence that under the circumstances that existed on or prior to July 10, 1954, a reasonably prudent person situated as was defendant, would have moved in equipment as did defendant to help complete the fill?

"Answer Yes or No."

Answered "No".

7. "From a preponderance of the evidence what do you find to be the reasonable cost of the equipment furnished and labor performed by the defendant in completing the fill?

"Answer by stating the amount, if any, in dollars and cents."

Answered "None".

■ Appellant's principal complaints which it raises by its points 1 and 2 are that the trial court erred in permitting the jury to determine that the bolts, nuts and galvanizing as well as the amount of dirt required to complete the fill over and above the estimate contained in the Government papers were extras, and in rendering judgment for the value of these items over and above the sums provided for in the subcontract. The judgment includes an allowance of $2,986.19 for bolts, nuts and galvanizing in addition to the contract price stipulated under Item 4 and as well an allowance of $3,843 over and above the contract price for the fill on account of 10,248 additional cubic yards of dirt. We sustain these points.

We first consider appellee's claim and appellant's denial that the facts authorized a jury finding that the contract did not embrace an obligation on Flores's part to furnish the bolts, nuts, and galvanizing in connection with the work he contracted to do under Item 4 of the contract. A study of the contract will reveal it includes a general provision, conjunctively stated, to the effect that the payments provided for the various items of the work include (a) all necessary tools, equipment, fuel, scaffolding, and (b) any and all other *materials*, equipment and labor necessary to complete the above work according to the plans and specifications for the maintenance and repair to the east flood gate Matagorda Locks. Also that Item 4 of the contract providing for the removal and reinstallation of rotten timber fenders contains an apparent special exception to the above general requirement by which "all

new timber shall be furnished on job site by prime contractor." It is inescapable to our minds the contract plainly provides that all materials required to complete the work contemplated by Item 4, denominated Removal and Reinstallation of Rotten Timber Fenders, except "new timber", including the bolts, nuts and galvanizing, are to be furnished by Flores. It is equally clear that by the special provision contained in Item 4, all new timber is to be furnished by Tower Contracting Company, and this because of the special provision therefor unquestionably inserted in the contract as an exception to the general provision requiring the sub-contractor to furnish "any and all * * * materials * * *" required to complete the work. In his brief appellee seeks to support his position that the value of the bolts, nuts and galvanizing was properly allowed as an extra on the claim that "the sub-contract merely obligated the appellee to furnish the labor and equipment with which to do the work. There is not a specific provision in the entire sub-contract which obligated appellee to furnish material going into the job." This contention, we think, is refuted on the face of the contract itself. See Baker v. Baker, Tex.Civ.App., 169 S.W.2d 1016, construing a contract of settlement, general in its terms, but containing specifically stated exceptions and applying the principle of expressio unius est exclusio alterius.

■ In respect to the contention that the additional 10,248 cubic yards of compacted dirt required to complete the fill over and above the 22,000 cubic yards estimated by the engineers was an extra— as we have pointed out, it is conceded by both parties that Item 7 of the sub-contract required Flores to do the work of making the fill according to the plans and specifications and drawings which were part of the primary contract, including the installation of the extra 10,248 cubic yards of dirt. At the submission and in response to a question directed to appellee's contention that the additional 10,248 cubic

yards was an extra, his counsel was unwilling to commit himself to the proposition that had the estimate proved wrong on the topside; i. e., had it proved to be an over-estimate, say by 50%, Tower would have been entitled to an abatement in the lump sum contract price of $8,250 proportionately. Since the contract is plain in respect to the work which Flores undertook to do and the lump sum price for which he undertook to do it, we are unable to see how, in the absence of a plea for rescission, Flores's reliance upon a mistake of the Corps of Engineers can avail him. Flores did not contract to install 22,000 cubic yards of dirt. He contracted to install the fill according to the plans and specifications therefor. This he does not deny. Had there been a plea for reformation, based upon mutual mistake, we are at a loss to see how the Court could reform the contract, even assuming mutual mistake, so as to make a new contract for the parties. When the mistake was discovered, plaintiff did not sue for rescission on claim of hardship, accident, mutual mistake or fraud in inducing the execution of the contract; but, on the other hand, he proceeded about the work. Galveston Causeway Construction Co. v. Galveston, H. & S. A. R. Co., D.C., 284 F. 137, affirmed 287 F. 1021. In these circumstances, he is bound by his contract.

■ Though the evidence showed that after the mistake in estimation above referred to was discovered, appellee was assured by appellant that the matter would be adjusted or made right, still appellee wholly fails to show any consideration for such promise. An agreement by a contractee to compensate a contractor for doing what he is already bound to do by a valid contract is without consideration. Jones v. Risley, 91 Tex. 1, 32 S.W. 1027; Stone v. Morrison & Powers, Tex.Com.App., 298 S.W. 538.

Whether, had Flores pleaded an estoppel based upon Tower's assurances that he would be compensated for the extra dirt required for the fill, he might have recovered therefor, we need not consider. Any such estoppel would have to be based upon change of position—in this case Flores's abandonment of his right of rescission, if any, based on mutual mistake. However, no such question is before us. There is no hint of estoppel in the pleadings.

We hold that under the undisputed facts Flores was not entitled to any allowance as for extras on account of furnishing the bolts, nuts and galvanizing, or for moving the additional 10,248 cubic yards of dirt over and above the estimate of the engineers required to complete the fill, because he was legally bound under his contract for these on the compensations provided for by Items 4 and 7 of that instrument.

In support of his position that the contract did not cover the extra 10,248 cubic yards of dirt required to complete the fill, and that he is entitled to an allowance as an extra on that account, appellee cites us to United States ex rel. Johnson v. Morley Const. Co., 2 Cir., 98 F.2d 781, 786. Under the facts of that case and the wording of a certain sub-contract there involved, it was held that the sub-contract incorporated all of the provisions of the main contract, including a provision of such main contract providing for the allowance of an extra should rock be encountered within the limits of a required excavation. To our minds, the part of the opinion to which we are cited—page 787, sub-title (2b), Rock Excavation—is not analogous. Another part of the same opinion, however, would seem, by a process of reverse reasoning, to support our views. The sub-contractor was allowed to recover as an extra for additional work induced by a mistake in the plans and specifications furnished him by the main contractor. The main contractor resisted the claim for this extra on the ground that in end result the sub-contractor had been required to perform no more or greater service than he

had originally contemplated. The court said:

"The judge allowed $10,350.29, for the regrading, to which the surety objects because in the end Rupp did no more excavation than he had figured upon originally in his bid. We cannot see the relevance of this. Rupp did the work called for by the contract, as he was justified in understanding it; when he finished, he was entitled to the contract price: *the equivalence of what he had done with what he had supposed would be necessary, had nothing to do with the case; if the contract turned out more profitable than he had expected, it was his good fortune.*" (Emphasis supplied.)

■■ Appellant's third point reads as follows:

"Where, under the undisputed evidence a substantial part of the total fill was made by Appellant, the burden is upon the Appellee to show the amount and value of (the) part furnished by him and it is error to render judgment against the Appellant for entire amount of dirt moved by the combined efforts of both parties."

The point is said to be germane to assignments of error Nos. 16, 17 and 26 in the motion for new trial. Assignments 16 and 26 relate exclusively to the court submitting issues calculated to support an allowance as an extra on account of the additional 10,248 cubic yards of dirt required to complete the fill. Assignment of error No. 17 on the motion for new trial reads as follows:

"17. The Trial Court erred in refusing to incorporate in its charge to the jury Defendant's requested Special Issue No. 2, as follows: 'From the preponderance of the evidence what additional sum of money, if any, would the Plaintiff have expended in completing the fill had Defendant not aided in the completion of the fill?' for the reason that had said issue been submitted and answered the answer thereto, when taken in connection with the answer to Special Issue No. 4 inquiring as to the reasonable value of furnishing the extra 10,248 cubic yards of dirt, which the jury answered $3,843.00, would have enabled the Court to frame its judgment so as to award the Plaintiff the profit he would have made and avoid the error of an excessive judgment and an unjust enrichment."

Point No. 3 as made, when read in the light of the assignments of error in the motion for new trial to which it is said to be germane, is undoubtedly multifarious and technically bad for that reason. However, under the liberal rules of briefing, when error is made to appear, we would be required on application to permit the filing of proper points of error. See Warnasch v. Wagner, Tex.Civ.App., 291 S.W.2d 389. For this reason, though appellant combines in its argument under this point complaints that the judgment should not have included any allowance for extras, along with its complaint that there was no justification for the court allowing a full recovery for the contract price at which appellee agreed to complete the fill, we will consider the latter complaint.— Especially in view of the fact that in the submission the parties treat appellant's Point No. 3 as broad enough to permit it to argue error of the court in allowing plaintiff the full lump sum contract price for completing the fill in the face of undisputed evidence that a substantial part of the work was done by Tower's second contractor, Hall & Redinger.

■■ The authorities are practically unanimous, both within and without the State, on the proposition that where an owner wrongfully interferes with a contractor and prevents his completion of the contract, the proper measure of damages, where the contractor sues *on the contract*, is the contract price less what would have been the cost to the contractor of completing the work; or, differently put, the contract value of the work actually done, plus any profit the contractor would have

made had he been permitted to complete the performance of his contract. This, however, is not the sole measure of damages. In the case of wrongful interference by an owner, the contractor may treat the contract as rescinded and recover on quantum meruit the full value of the work done, even though it may exceed the contract price. Here, in view of the evidence and the condition of the record, we would have had no difficulty in affirming an allowance to the contractor of an amount equivalent to the contract price for the work actually done, but on the theory of quantum meruit, had plaintiff's pleadings included a count on quantum meruit applicable to the work done by him under the contract before he was wrongfully prevented by Tower from completing it. But, there is no such count. Plaintiff's pleadings do contain a plea of quantum meruit, but this plea relates exclusively to the claim for extras. It is not broad enough to include the work done under the written sub-contract. We are convinced it was error for the trial court, under the trial pleadings, to permit a recovery for the full $8,250 lump sum contract price for completing the fill without any deduction on account of what would have been the cost to Flores of doing the substantial part of the work which the evidence shows was done by Hall & Redinger. The evidence does not show a case of substantial performance but only of partial performance. On a retrial plaintiff may wish to revamp his pleadings to sue on quantum meruit for the work done under the contract. In view of defendant's evidence, to wit: its payment to Hall & Redinger of $9,413.79 for less work than was done by plaintiff, an allowance on such basis might very well exceed a recovery under the contract itself. For Texas cases on the measure of damage applicable under the circumstances of this case, see Texas Associates, Inc. v. Joe Bland Const. Co., Tex.Civ.App., 222 S.W.2d 413; Hood v. Raines, 19 Tex. 400; Porter & McMillan v. Burkett, Murphy & Burns, 65 Tex. 383; Hillyard v. Crabtree's Adm'r, 11 Tex. 264; Carroll v. Welch, 26 Tex. 147; Weis v. Devlin, 67 Tex. 507, 3 S.W. 726; Osage Oil & Refining Co. v. Lee Farm Oil Co., Tex.Civ.App., 230 S.W. 518. Text references are: 17 C.J.S., Contracts, § 367, p. 834; 9 Amer.Jur., Building Contracts, Sec. 45, page 34, and the annotations in 66 A.L.R. 745, and 17 A.L.R.2d, page 968.

The reason for the rule establishing the stated measure of damage where a contractor has been unjustifiably prevented from finishing his work and sues on the contract seems to rest on the legal proposition that while a contract is executory, the owner has the power to violate or renounce his contract and that in so doing he subjects himself only to such damages as will actually compensate the other party for having the full performance prevented. See Rockingham County v. Luten Bridge Co., 4 Cir., 35 F.2d 301, 308, 66 A.L.R. 735, stating the rule as follows:

"And the rule as established by the great weight of authority in America is summed up in the following statement in 6 R.C.L. 1029, which is quoted with approval by the Supreme Court of North Carolina in the recent case of Novelty Adv. Co. v. Farmers' Mut. Tobacco Warehouse Co., 186 N.C. 197, 119 S.E. 196, 198: 'While a contract is executory a party has the power to stop performance on the other side by an explicit direction to that effect, subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part at that stage in the execution of the contract, The party thus forbidden cannot afterwards go on, and thereby increase the damages, and then recover such damages from the other party. *The legal right of either party to violate, abandon, or renounce his contract, on the usual terms of compensation to the other for the damages which the law recognizes and allows, subject to the jurisdiction of equity to decree specific performance in proper cases, is universally recognized and acted upon.*'" (Emphasis supplied.)

We do not think that Judge Fly's opinion in Mitchell v. Boyce, Tex.Civ.App., 120 S.W. 1016, indicating that a contractor is entitled to the full contract price for partial performance only, where the owner interferes and prevents completion, can be reconciled with what we consider to be more authoritative Texas authorities.

■ Appellee's position on this point is not so much to quarrel with the measure of damage, which we have adopted, but to insist that the burden of proof was upon defendant to show what would have been the cost to plaintiff of performing the substantial part of the work of installing the fill which the record shows was done by Hall & Redinger. Plaintiff urges this on the theory that since the jury by its verdict has established defendant's conduct in preventing plaintiff from completing his contract to be wrongful, plaintiff ought prima facie be entitled to a recovery of the full contract price. We do not agree. It is well established that plaintiff's case in his suit on the contract includes the burden of establishing his proper damages by a preponderance of the evidence. This burden plaintiff, no doubt, can discharge with not too great difficulty. Even were the question an open one, we would hesitate to place such burden on defendant in view of the difficulty, if not impossibility, of defendant making such proof, and also because it is plainly not defensive matter.

■ By an additional point, appellant says the judgment should be reversed because the verdict is "so excessive and contrary to the overwhelming preponderance of the evidence as to constitute manifest injustice and to exhibit bias and prejudice against the appellant." Though this point is also multifarious, we have considered it. We find nothing excessive in the verdict, and there seems to be ample support in the evidence for all the jury findings, including those upon which appellant's cross-action was denied, except possibly for the finding in response to Issue No. 7 relating to the reasonable cost to the defendant in completing the fill, to which the jury answered "none". We do not consider this answer fatal to the verdict as proof of pervasive passion and prejudice. It may have struck the jury that defendant's evidence on the point was unreliable and, therefore, that they were unable to find any amount "from a preponderance of the evidence". We say this because defendant claims to have paid Hall & Redinger for doing only a part of the work an amount greater than that for which plaintiff contracted to do the whole, and plaintiff's price to defendant was less than defendant's price to the Government. However, the answer "none" to Issue No. 7, even if unjustifiable, does not establish passion and prejudice on the part of the jury in answering other issues sufficient alone to defeat defendant's cross-action. See Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334, 335, where it is said:

"There is nothing in the record suggesting that the jury was induced by prejudice or by some improper influence to answer as it did the issue as to damages, unless it is *the bare fact that the answer is contrary to the undisputed evidence*, which shows that defendant in error suffered severe physical injuries. The action of a jury in answering an issue directly contrary to the undisputed evidence may be cause for suspicion that the answer was induced by prejudice or by improper influence. But we would not be justified in assuming that prejudice or improper influence was responsible for the jury's answers convicting defendant in error of contributory negligence when there is in the record substantial evidence supporting those answers and no evidence that prejudice or improper influence entered into or caused them. The following cases, in the first two of which applications for writ of error were refused, support our conclusion: McCormick v. Southwestern Bell Telephone Co., Tex.Civ.App., 36 S.W.2d 1082; Teston v. Root, Tex.Civ.App., 95 S.W.2d 524; Bendelin v. Thompson, Tex. Civ.App., 33 S.W.2d 220; Osterloh v. San Antonio Public Service Co., Tex.Civ.App.,

77 S.W.2d 290; Harrison v Missouri, Kansas & T. R. Co. of Texas, Tex.Civ. App., 89 S.W.2d 455; Duff v. Roeser & Pendleton, Inc., Tex.Civ.App., 96 S.W.2d. 682; Greaber v. Coca-Cola Bottling Works of Dallas, Texas, Tex.Civ.App., 98 S.W.2d 1028; Robertson v. Humble Oil & Refining Co., Tex.Civ.App., 116 S.W.2d 820." (Emphasis supplied.)

█ By points 5 and 6 appellant assigns that the trial court erroneously permitted the proof that extensions of time were issued by the Government to forgive liquidated damages provided for in the main contract, and also improperly permitted proof of the total amount paid by the Corps of Engineers to appellant under the prime contract. In view of the jury's findings establishing that when the appellant interfered with appellee in the performance of his contract, appellee was proceeding with due diligence and that appellant thus breached the contract, which finding is well supported by the evidence; and, in view of the disposition which we are making of the case, the error, if any, in admitting the proof complained of, is undoubtedly harmless. None of it related to any material issue in the case, and we are unable to find that the error, if any, was such as would reasonably be calculated to cause, and probably did cause, a result unfair to defendant.

An additional point of error complaining of the inclusion in the judgment of an item of $424.99 has been abandoned.

█ The sub-contract in question is clearly divisible in respect to its several items, as are the claims for extras from the several items in the contract. It is also true that plaintiff's claim for damages based on defendant's claimed breach of Item 7 of the contract relating to the fill is separable from defendant's cross-action against plaintiff, based on the same item, in which defendant asserted that plaintiff first breached the contract—on which cross-action judgment went against defendant in the trial court. See Leon v.

Noble, Tex.Civ.App., 234 S.W.2d 454, construing Rules 97 and 174, Texas Rules of Civil Procedure, to permit separate trials in proper circumstances of cross-claims growing out of a single automobile collision, and holding that plaintiff, who had been permitted to take a non-suit without prejudice as to his cause of action after defendant had cross-acted, was not barred in a subsequent action where cross-plaintiff proceeded to trial and lost in the original suit. See also Humble Oil & Refining Co. v. Luling Oil & Gas Co., Tex.Civ.App., 192 S.W.2d 315, affirmed 144 Tex. 475, 191 S.W.2d 716.

Such cases as Texas Employer's Insurance Association v. Lightfoot, 139 Tex. 304, 162 S.W.2d 929, and The City of Austin v. Howard, Tex.Civ.App., 158 S.W.2d 556, are not thought applicable to the present record on the question of divisibility and separability of the several claims of the plaintiff and the cross-claim of defendant.

Our order will be: (a) to reverse the judgment of the trial court in so far as it allows the above discussed claims for extras, and here render judgment on said claims in favor of appellant; (b) to affirm the judgment of the trial court in so far as it denies appellant's cross-claim for plaintiff's alleged breach of Item 7 of the sub-contract, and in all other respects save as set out in (a) and (c) hereof; and (c) to reverse and remand the cause for a new trial solely on the right of plaintiff to recover on the claims which it asserts under Item 7 of the sub-contract. Our order will be without prejudice to the right of plaintiff, if he so desires, to amend and set up an alternative count on quantum meruit for the work actually done by him under Item 7 of the sub-contract.

We withhold comment on the question of whether on such remand any of the fact issues which may arise are res adjudicata by virtue of this judgment. The point may never arise. It is not before us now.

CODY, J., not sitting.

Exhibit A

Purchase Order

Tower Contracting Co., Inc. of Texas,

P. O. Box 5075

Corpus Christi, Texas

No. 12–33–1

Sheet 1

Freeport Machine and Boiler Shop

Mr. Hunter Flores

Freeport, Texas

Req. No.

11

Date 1–5–54

Ship to: Tower Contracting Co., Inc. of Texas    Job Maintenance and Repair to East Floodgate, Colorado

At: Matagorda Locks, Matagorda, Texas River, Matagorda, Texas

Ship Via:

Prepaid Collect     Invoices Required    Six

F. O. B.     Terms    Net

| Item | Quantity | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1 | 1 | By-Pass Channel | Lump Sum | |
| | | The sub-contractor shall excavate the by-pass channel with two 1½ yard draglines and one dredge to the grade and bottom widths indicated on drawings in accordance with Technical Provisions; Section 1, Paragraph 1–03, a, b and c and Paragraph 1–05. This by-pass shall be completed within 30 days. | | $21,400.00 |
| 2 | 2 | Installation And Removal of Poiree Dams | Lump Sum | |
| | | Transferring from Brazos Flood-gates near Freeport, Texas to job site Matagorda, Tex. Install poiree dams according to plans and specifications in the Technical Provisions, Section 2, Paragraph 2–01, 2–02 and 2–13. | | $ 8,400.00 |

| Item | Quantity | Description | Unit Price | Amount |
|------|----------|-------------|------------|--------|
|  |  |  | Lump Sum |  |
| 3 | – | De-watering Work Area |  | 9,500.00 |
|  |  |  |  | $9,000.00 |
|  |  | Area shall be de-watered according to Technical Provisions, Section 2, Paragraph 2–03 and subcontractor shall remove any any all mud and debris from work area. |  |  |
| 4 | – | Removal and Reinstallation of Rotten Timber Fenders |  |  |
|  |  |  | $330.00 per M feet Approximately 28,000 board feet |  |
|  |  | According to Technical Provisions, Section 5, Paragraph 5–03, 5–04(a) Timber Only—All new timber shall be furnished on job site by Prime Contractor; (c) Bolts and Nuts—(1) Galvanizing: 5–05, 5–06, Steel Plate Only. Prime Contractor shall deliver one steel plate for guide wall to be installed by sub-contractor. |  |  |

Hunter Flores     Tower Contracting Co., Inc. of Texas

Freeport Machine and Boiler Shop By ————————————

         J. Raymond Jones, Vice Pres.

Freeport, Texas

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Purchase Order

    Tower Contracting Co., Inc. of Texas

      P. O. Box 5075

      Corpus Christi, Texas

            No. 12-33-1

Freeport Machine and Boiler Shop
Mr. Hunter Flores         Sheet 2
Freeport, Texas

      Req. No.
        11
     Date 1-5-54

Ship to: Tower Contracting Co., Inc. of
    Texas     Job Maintenance and Repair to East Floodgate, Colorado River, Matagorda, Texas
  at: Matagorda Locks, Matagorda, Texas

  Prepaid   Collect

       Ship Via:
F. O. B. ————————Invoices required Six
      Terms     Net

| Item | Quantity | Description | Unit Price | Amount |
|------|----------|-------------|------------|--------|
| 5 | — | Removal And Reinstallation of Hinge Pins & Parts<br>Removal and reinstallation of Hinge pins and parts according to Technical Provisions, Section 2, Paragraph 2–05 a and b and Paragraph 2–06 a, b, c, d, e, f. If these items have to be replaced, Prime Contractor shall furnish same. | Lump Sum | $3,000.00 |
| 6 | — | River Crossing for Underground Electrical Cable and Underground Telephone Cable and Laying Cables in Excavated Trenches<br><br>According to strict specifications and drawings No. E7/1 and Technical Provisions, Section 7, Paragraph 7–08 and all excavating and backfilling necessary to make connection from pole structure B to splice section area on east side of river. | Lump Sum | 8,000.00 |
| 7 | — | Fill<br>Fill shall be in accordance with technical provisions, Section 1, Paragraph 1–04 and in accordance with site plan No. 1/1 | Lump Sum | 8,250.00 |

OK
JDB                  ———
                    750.00
Total           $67,~~250.00~~

H.F.

The above price includes all necessary tools, equipment, fuel, scaffolding and any and all other materials, equipment and labor necessary to complete the above work according to plans and specifications for the maintenance and repair to the East Floodgate, Matagorda Locks.

Hunter Flores                          Tower Contracting Co., Inc., of Texas

Freeport Machine and Boiler Shop   By      J. D. Blanton, Pres.

Freeport, Texas.                         ~~J. Raymond Jones, Vice Pres.~~

Purchase Order

Tower Contracting Co., Inc. of Texas

P. O. Box 5075

Corpus Christi, Texas

Freeport Machine and Boiler Shop                    No.   12–33–1

Mr. Hunter Flores                                            Sheet 3

Freeport, Texas

Req. No.

11

Date   1–5–54

Ship to: Tower Contracting Co.,      Job    Maintenance and Repair to
         Inc. of Texas                      East  Floodgate,  Colorado
                                            River, Matagorda, Texas.

    At: Matagorda Locks, Matagorda, Texas

        Prepaid          Collect
                         Ship Via:

F. O. B. ————————————

                         Invoices Required    Six

                         Terms                Net

| Item | Quantity | Description | Unit Price | Amount |
|------|----------|-------------|-----------|--------|
|  |  | Matagorda, Texas. Also work-men's compensation, full comprehensive liability and property damage insurance, social security and unemployment taxes for the complete work to be done. A performance bond for the total sum of the contracted price is required upon receipt of this purchase order. All of this work shall be performed within the time limit as shown in specifications and outlined in progress report to the satisfaction of the contracting officer. |  |  |

Sheets 1, 2, & 3.

Accepted:

Freeport Machine and Boiler Shop      Tower   Contracting   Co.,   Inc.   of
                                      Texas

By: /s/ Hunter Flores                 By: /s/ J. D. Blanton   Pres.
    ————————————                          ————————————
    Hunter Flores                         J. Raymond Jones, Vice President